ANNA PEZZINO, PLAINTIFF, v. SALVATORE PEZZINO, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Argued April 10, 1964—Decided May 13, 1964.

*Mr. Benjamin D. Braelow* for plaintiff.

*Mr. Philip Insabella* for defendant.

The opinion of the court was delivered by

CONSODINE, J. C. C. (temporarily assigned). The parties here were married on October 28, 1934. Plaintiff filed a complaint in the Juvenile and Domestic Relations Court on April 22, 1952, alleging nonsupport of herself and a daughter, age 16. On June 2, 1952 that court sustained the complaint and directed a weekly payment through the probation department to plaintiff. Thereafter, the amount was alternately increased and diminished.

Defendant left New Jersey on February 11, 1955 and arrived in Reno, Nevada, on February 14, 1955. He remained there until March 4, 1958. At that time he returned to visit his mother, remaining here temporarily because of her illness and permanently when he took over a barber shop in which he had employment.

Defendant instituted a divorce proceeding in Nevada on April 4, 1955, and an *ex parte* decree was entered on May 6, 1955. While in Nevada for over three years defendant worked at his trade and in other employment, maintained a residence, had car registration and licenses, and was a member of the union. He filed his federal income tax returns in Nexada for the years 1955 to 1958 inclusive. Apparently defendant remarried after the divorce.

On May 17, 1960 plaintiff sued in this court for divorce on the ground of desertion. On June 9, 1960 answer was filed. On direct examination at trial plaintiff voluntarily dismissed this complaint for divorce and "nullifying State of Nevada divorce." The judgment thereon of May 18, 1961 reserved to plaintiff the right to make application for "alimony" on a showing of necessity. Leave to file a supplemental complaint to include a count for separate maintenance was granted in March 1963. Filed in May 1963, it sought that remedy and also divorce on the ground of adultery and a judgment setting aside the Nevada decree of divorce. Issue was joined in June 1963. The case was heard in part in October 1963.

By motion in the cause plaintiff seeks alimony *pendente lite*. Defendant countermoves the dismissal of the second and third counts of the supplemental complaint on the ground that they are inconsistent with the judgment and the order authorizing the filing of the pleading. They are that and moreover not supplemental. The latter motion must be granted.

A review of the Juvenile and Domestic Relations Court matter is necessary to complete the picture. There seems to have been a period of inaction between March 17, 1954 and February 23, 1955, at which time defendant was again in

arrears. On that date (12 days *after* defendant left the State) notices of hearing were mailed to both parties. Defendant did not appear on March 2. A bench warrant issued which was never executed. The court by order closed the case on June 6, 1956 because the bench warrant was recalled by plaintiff.

On May 14, 1956 the daughter of the parties wrote that court seeking the lifting of the bench warrant for two weeks so that her father could attend her wedding in New Jersey. She added that her mother did not wish to dismiss the charges. She was informed that the bench warrant could be recalled only if the defendant fulfilled his duty of support or on formal withdrawal of the charges filed. On June 4, 1956 plaintiff by letter requested the withdrawal of the bench warrant because of the forthcoming marriage, and further stated that since she could not finance the marriage festival defendant would finance it in return for the release of the warrant. The case was closed two days later.

That marriage did not take place. Defendant did not return to New Jersey until March 4, 1958. The daughter subsequently married another. Defendant says he was not invited and did not attend.

At trial on the amended complaint defendant also testified, as plaintiff's witness, that his daughter wrote him about the first forthcoming marriage, requested money, and advised him of the warrant. He also testified that plaintiff then wrote him that the warrant had been recalled. He maintains that he sent $500 to plaintiff for the expenses of the marriage and also paid some bills attendant to the forthcoming festivities. The daughter's testimony corroborated her father's in some regards and lacked knowledge in others. Plaintiff denied that she received any money from defendant after he went to Nevada, except for $10 per week he sent her until their daughter was 18 years of age.

The remaining motion for *pendente lite* support raises the issue whether this court acting thereon can disregard the sworn testimony of the parties in the trial of the original

complaint. The court cannot. The testimony is part of the case, *i. e.,* within the framework of the original suit, as much as affidavits and other pleadings are.

The problem before this court has been broadly referred to as divisible divorce, although here there is but a facet of it. "Divisible Divorce," 76 *Harv. L. R.* 1233 (1963); 64 *Harv. L. R.* 1287 (1951).

*Williams v. North Carolina (Williams* I), 317 *U. S.* 287, 63 *S. Ct.* 207, 87 *L. Ed.* 279 (1942), overruled *Haddock v. Haddock,* 201 *U. S.* 562, 26 *S. Ct.* 525, 50 *L. Ed.* 867 (1906), in holding that the *ex parte* Nevada decrees of two domiciliaries of North Carolina who then remarried were entitled to full faith and credit under the Constitution (*U. S. Const. Art.* IV, *Sec.* 1). The holding was a defense to a criminal charge in North Carolina. Subsequently, *Williams* II, 325 *U. S.* 226, 65 *S. Ct.* 1092, 89 *L. Ed.* 1577 (1945), allowed the state of domicile to relitigate the finding of a *bona fide* domicile in a Nevada *ex parte* divorce action.

"The judgment of the sister state raises a presumption that the court possessed jurisdiction over the subject matter and the persons, and the burden of demolishing the judgment rests heavily upon the one who assails it. *Cook v. Cook,* 342 *U. S.* 126, 72 *S. Ct.* 157, 96 *L. Ed.* 146 (1951); *Ballentine v. Ballentine,* 112 *N. J. Eq.* 222 (*E. & A.* 1933)." *Laurino v. Laurino,* 28 *N. J. Super.* 119, 122, (*App. Div.* 1953).

For our procedure in such a jurisdictional conflict, see *Grunauer v. Grunauer,* 80 *N. J. Super.* 531 (*App. Div.* 1963).

The Supreme Court on the same day it decided *Williams* II, held in *Esenwein v. Commonwealth of Pennsylvania ex rel. Esenwein,* 325 *U. S.* 279, 65 *S. Ct.* 1118, 89 *L. Ed.* 1608 (1945), that where an *ex parte* divorce decree of the husband is not founded upon a *bona fide* domicile, a court of another state is not compelled under the full faith and credit clause, to grant the husband's application for relief from a support order previously granted to his wife, even though, according to the law of such state, a support order does not survive divorce. The majority opinion reiterated the doctrine that

*prima facie* validation must be accorded to the *ex parte* Nevada decree, even though allowing under *Williams* II the contest of domicile. The court refused to retry the facts on which lack of jurisdiction was found.

In that case Justices Douglas and Rutledge sponsored the expressed theory of basic difference between the problem of marital capacity and the problem of support.

In *Estin v. Estin,* 334 *U. S.* 541, 68 *S. Ct.* 1213, 92 *L. Ed.* 1561 (1948), the court affirmed a New York decision that a prior separate maintenance judgment survived an *ex parte* Nevada divorce granted to a Nevada domiciliary, stating:

"The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony." 334 *U. S.,* at *page* 549, 68 *S. Ct.,* at *page* 1218)

Justice Douglas premised the ruling on the due process clause (there must be personal jurisdiction over a party before an adjudication of her property rights, that is, the support under the local judgment), and the interest of New York in keeping its domiciliary from becoming a public charge.

If the period from *Haddock v. Haddock, supra,* to the *Williams* I and II cases were the period of gestation of the doctrine, the child born with the *Estin* case, *supra,* has grown surprisingly in stature and breadth since that opinion. There followed as the major decisions *Cook v. Cook,* 342 *U. S.* 126, 72 *S. Ct.* 157, 96 *L. Ed.* 146 (1951); *Johnson v. Muelberger,* 340 *U. S.* 581, 71 *S. Ct.* 474, 95 *L. Ed.* 552 (1951); *May v. Anderson,* 345 *U. S.* 528, 73 *S. Ct.* 840, 97 *L. Ed.* 1221 (1953); *Armstrong v. Armstrong,* 350 *U. S.* 568, 76 *S. Ct.* 629, 100 *L. Ed.* 705 (1956); *Vanderbilt v. Vanderbilt,* 354 *U. S.* 416, 77 *S. Ct.* 1360, 1 *L. Ed. 2d* 1456 (1957).

But the doctrine has not been without judicial adversaries at all times in its short span of life.

"Despite the apparent finality of the *Estin* and *Vanderbilt* decisions, a rearguard action has been fought against the doctrine of divisible divorce itself. Mr. Justice Jackson, who dissented each time the

doctrine was applied, never reconciled himself to the idea of *ex parte* divorce, regarding it as 'a concept as perverse and unrealistic as an *ex parte* marriage,' and a repudiation of procedural due process, imposing on the absent spouse a choice between defaulting on the merits or traveling to a distant state whose laws favored divorce; divisible divorce was simply a 'compensating confusion' violative of the full faith and credit obligation. Mr. Justice Frankfurter, while accepting *Estin* on the ground that a prior support order was entitled to full faith and credit in the divorce forum, found no justification for permitting inchoate support rights to survive, and dissented in *Vanderbilt.*" 76 *Harv. L. Rev.* 1233, at *p.* 1238

The *Estin* case requiring the forum to give recognition to a valid *ex parte* decree of a sister state as terminating the marital status of the spouse, but not requiring the forum to give recognition to such decree as terminating the wife's right to alimony resulted in the enactment of the following New Jersey statute in 1954:

"When a husband has secured a judgment or decree of divorce, whether absolute or from bed and board, or of nullity or annulment of marriage, in an action whether brought in this State or elsewhere, wherein jurisdiction over the person of the wife was not obtained, the court may make the same orders and judgments touching the suitable support and maintenance to be paid and provided by the husband, or to be made out of his property, for the wife and her children, or any of them, by their marriage and for such time, as the nature of the case and circumstances of the parties render suitable and proper, pursuant to the provisions of the statute hereby supplemented notwithstanding the securing of such judgment or decree." *N. J. S.* 2A:34-24.1

The introductory statement attached to the bill stated:

"The legislation is necessary to protect New Jersey wives whose right to support from their absconding husbands may now be completely cut off by *ex parte* foreign divorces secured by the husbands in the absence of a prior New Jersey order or judgment for such support. In order to avoid a possible charge of discrimination against foreign divorces such legislation should be made applicable whether the divorces, based on constructive service, are secured locally or in the foreign jurisdiction." *N. J. S.* 2A:34-24.1. 10 *N. J. Practice* (*Herr, Marriage, Divorce and Separation*), § 555, *p.* 474, *fn.* 44.

The legislation was essential in the light of our holding that a valid *ex parte* divorce in a foreign state barred mainte-

nance, a statutory remedy founded on a relationship of husband and wife. *Peff v. Peff,* 2 *N. J.* 513 (1949) ; *Laurino v. Laurino, supra. Contra, Brown v. Brown,* 19 *N. J. Super.* 431 (*Ch. Div.* 1952).

Under the 1954 legislation the wife in this matter is entitled to support if need be shown. The use of the word "alimony" in the judgment was premised on a holding by this court of an invalid *ex parte* Nevada divorce and should be construed as support in the attainment of substantial justice between the parties.

I hold that the Nevada decree in favor of this defendant *ex parte* was a valid exercise of jurisdiction by the courts of that state on the facts in this case; that plaintiff has the right to seek support under our statute, *supra;* that it is immaterial whether there existed a separate maintenance suit, order or judgment, a *pendente lite* order in a divorce action, or a suit or order in the Juvenile and Domestic Relations Court as here, or any litigation at all in this State prior to the *ex parte* decree.