Merrimack
No. 87-001

NEW LONDON LAND USE ASSOCIATION

v.

NEW LONDON ZONING BOARD OF ADJUSTMENT & a.

June 6, 1988

*Clauson, Smith & Whelan*, of Hanover (*K. William Clauson* on the brief and orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord (*Richard F. Upton* on the brief and orally), for the defendant New London Zoning Board of Adjustment.

*McSwiney, Jones, Semple & Douglas*, of New London (*Robert E. Bowers, Jr.*, on the brief and orally), for intervenor Lakeside Lodge, Inc.

THAYER, J. In this zoning case, the plaintiff, New London Land Use Association (the Association), appeals the Superior Court's (*Cann*, J.) decision upholding the New London Zoning Board of Adjustment's (board) grant of a special exception to Lakeside Lodge, Inc. (Lakeside), the intervenor in this case. The principal issue before us is whether a zoning ordinance requirement which need not be met for a particular land use, because it was a prior nonconforming use, must nevertheless be met in order for the landowner to obtain the special exception required for a new development of the land. For the reasons that follow, we reverse.

The Association is a group of private landowners in the vicinity of and abutting Lakeside's property located on Route 103A in New London. Lakeside is a commercial motel operation consisting of seventeen housekeeping units located on a seventeen-acre parcel of land on the east side of Route 103A. Lakeside also owns a small parcel of land opposite the lodge, on the west side of Route 103A, on the shore of Lake Sunapee. From this beach area, a small dock owned by Lakeside extends into Lake Sunapee.

Lakeside operates within a district classified as Agricultural Rural Residential (ARR) under the ordinance. The ordinance, which was enacted in 1958, allows a maximum density of one residence per two acres within ARR districts. Since Lakeside was in operation before the ordinance became effective, its owners have been allowed to continue their commercial operation as a nonconforming use, on less than the required number of acres.

The ordinance requires that all condominium projects, or "Planned Unit Developments" (PUD's), meet special exception requirements. Lakeside applied to the board for a special exception to proceed with plans for its PUD. On May 24, 1985, the board issued a notice of decision granting a special exception which would allow Lakeside to raze, relocate, and construct seventeen new condominium units and one clubhouse building on the seventeen-acre parcel. Currently, Lakeside consists of a main lodge to which six units are connected, and eight additional buildings which surround the main lodge. These additional buildings vary in their size and in the number of units they contain. The proposed PUD would change the existing site substantially: the existing structures would be torn down; the seventeen new units would be clustered together around the property in one- or two-family dwelling units of varying sizes; and extensive sitework, including the establishment of new road networks, a pond and a new entryway, would be conducted. The plan also proposed a clubhouse, which would be

classified as an accessory use. Though the number of dwelling units would remain the same, the plans call for an increase in combined living, storage, garage and common space from 20,250 square feet to 45,262 square feet. Lakeside has also requested permission to increase the dock size to accommodate additional boats; however, the board declined to consider that request and referred the dock issue to the State Wetlands Board.

After the board granted a special exception to Lakeside, the Association filed a petition for rehearing, which the board denied on June 7, 1985. Thereafter, the Association twice requested permission to amend the petition for rehearing. Both requests were denied. Meanwhile, the Association filed an appeal with the superior court on July 1. On August 15, in a decision on the merits, the superior court upheld the board's grant of a special exception to Lakeside. This appeal by the Association followed, and Lakeside cross-appealed, arguing that the superior court should have dismissed the Association's appeal as not timely filed within the appeal period provided by RSA 677:4.

■■ We can easily dispose of the issue on cross-appeal before addressing the Association's issues. RSA 677:4, Appeal from Decision on Motion for Rehearing, states that "[a]ny person aggrieved by any order or decision of the zoning board of adjustment . . . may apply to the superior court within 30 days after the action complained of has been recorded . . . ." We will interpret the words of the statute according to their plain meaning. RSA 21:2. *King v. Sununu*, 126 N.H. 302, 306, 490 A.2d 796, 800 (1985). This appeal is one from a denial of a "rehearing." *Munger v. Town of Exeter*, 128 N.H. 196, 198, 512 A.2d 418, 419 (1986). The board denied the Association's petition for rehearing on June 7. The Association filed its appeal to the superior court on July 1, within the appropriate time period provided in RSA 677:4. In light of the statutory scheme and facts presented, Lakeside's claim is wholly lacking in merit. We now turn to the Association's arguments.

The Association raises five different issues on this appeal. First, the Association asserts that a prior nonconforming density cannot be used to satisfy current density requirements to gain a special exception as a planned unit development. Second, the Association contends that Lakeside's proposed removal of old structures and replacement with larger new structures upon a lot with a nonconforming density use requires a variance from the town's zoning ordinance rather than a special exception, which is required for all current planned unit developments. Third, claiming lack of

an evidentiary basis, the Association questions the validity of the town's approval of a separate clubhouse building, as an accessory use to the seventeen residential units. Fourth, the Association asserts that the board, in its deferral to the wetlands board, unlawfully refused to consider all aspects of the impact of the planned unit development upon the neighborhood, including the waterfront area and dock. Fifth, the Association contends that the superior court improperly refused to consider evidence, where the Association made an offer of proof involving evidence contrary to evidence presented by Lakeside before the board. Our ruling in favor of the Association on the first two issues is dispositive of the remaining issues.

Although the ordinance provides that PUD approvals must be the subject of special exceptions, the Association argues that the board erroneously allowed Lakeside the use of its nonconforming density to satisfy one of the requirements for a special exception. Under the ordinance, there are six requirements which an applicant must meet before the board may grant a special exception. The relevant requirement is under Article XIV(A)(6), which states that: "[t]he proposed structure and/or use shall be compatible with the spirit and intent of this Zoning Ordinance including its density standards." Article XII regulates nonconforming use, and section (B) provides that "any existing nonconforming use shall not be changed to another nonconforming use."

In its notice of decision on May 24, 1985, the board noted that "no change in the pre-existing nonconforming density . . . is proposed," and the board determined that the nonconforming use could be "lawfully continued if the project otherwise qualifies for use as a special exception . . . ." The board's "findings of fact are deemed *prima facie* lawful and reasonable, and the decision appealed from shall not be set aside or vacated, except for errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that said . . . decision is unreasonable." *Margate v. Town of Gilford*, 130 N.H. 71, 534 A.2d 717 (1987). However, after reviewing the record before us, we find that the board misunderstood the basic character of continuing nonconforming use as applicable to the facts of this case and hold as a matter of law that the board erred in granting the special exception.

Nonconforming uses relate to conditions which exist prior to the time a zoning ordinance is passed. RSA 674:19; *Arsenault v. Keene*, 104 N.H. 356, 358–59, 187 A.2d 60, 62 (1962). A

nonconforming use is a use in fact existing on the land at the time of adoption of the ordinance. *R. A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 113, 289 A.2d 646, 650 (1972). The right to maintain nonconforming uses is meant to protect property owners from a retrospective application of zoning ordinances, so that property owners may continue using and enjoying their property when their uses were lawful prior to the enactment of a zoning ordinance or amendment thereto.

■■ Generally, the right to continue a previously lawful use of one's property after enactment of a zoning ordinance that prohibits such use is a vested right recognized by the New Hampshire Constitution and our New Hampshire statutes. N.H. CONST. pt. I, arts. 2 & 12; RSA 677:19; *Town of Hampton v. Brust,* 122 N.H. 463, 468, 446 A.2d 458, 460 (1982); *Colby v. Town of Rye,* 122 N.H. 991, 992, 453 A.2d 1270, 1271 (1982); *Metzger v. Town of Brentwood,* 117 N.H. 497, 502, 374 A.2d 954, 957 (1977); *State v. Paille,* 90 N.H. 347, 352, 9 A.2d 663, 666 (1939). Because the right is vested, it may be continued into the future, where a substantial reliance has been placed upon that use or where the intent to use a property in a particular way is evident at the time the ordinance creating the nonconforming use is enacted. *Wunderlich v. Town of Webster,* 117 N.H. 283, 286, 371 A.2d 1177, 1179 (1977).

■ Nonconforming uses may be expanded, where the expansion is a natural activity, closely related to the manner in which a piece of property is used at the time of the enactment of the ordinance creating the nonconforming use. *Brust,* 122 N.H. at 468, 446 A.2d at 461; *State v. Syzmanski,* 189 A.2d 514, 516 (Conn. Cir. Ct. 1962); *In Re Freid-El Corp.,* 383 A.2d 1286, 1288 (Pa. Commw. Ct. 1978); 82 AM. JUR. 2d *Zoning & Planning* § 196 (1976). However, enlargement or expansion may not be substantial and may not render premises or property proportionally less adequate.

■ As a vested right, the nonconforming use may be passed on to subsequent title holders. *Robillard v. Town of Hudson,* 120 N.H. 477, 479, 416 A.2d 1379, 1380–81 (1980). A mere change from tenant occupancy to owner occupancy is not an extension of a nonconforming use. *Isabelle v. Newbury,* 114 N.H. 399, 403, 321 A.2d 570, 573 (1974) (Grimes, J., dissenting); *see also Beers v. Board of Adjustment,* 75 N.J. Super. 305, 316, 183 A.2d 130, 136 (N.J. Super. Ct. App. Div. 1962); 1 R. ANDERSON, AMERICAN LAW OF ZONING § 6.40 (1968). However, the creation of a nonconforming use depends upon the configuration of specific facts at a certain point

in time; therefore, in order to determine how much a nonconforming use may be expanded or changed, we must look to the facts existing when the nonconforming use was created. *L. Grossman & Sons, Inc. v. Town of Gilford,* 118 N.H. 480, 483, 387 A.2d 1178, 1180 (1978); *New London v. Leskiewicz,* 110 N.H. 462, 467, 272 A.2d 856, 860 (1970). We must also consider the extent to which the challenged use reflects the nature and purpose of the prevailing nonconforming use, whether the challenged use is merely a different manner of using the original nonconforming use or whether it constitutes a different use, and whether the challenged use will have a substantially different impact upon the neighborhood. *New London v. Leskiewicz, supra* at 468, 272 A.2d at 860.

With respect to Lakeside, the nonconforming use relates to the existence and operation of a seventeen-unit motel on a seventeen-acre parcel of land. Although the current zoning ordinance has more demanding density requirements, the owners of Lakeside have a vested right to continue the operation of their seventeen-unit motel as it existed before the town's ordinance was passed. Absent a willing relinquishment of its nonconforming use, Lakeside may not substantially change the way in which the motel units were situated on the seventeen-acre parcel when the nonconforming use was created.

Here, Lakeside's proposed planned unit development involves expansion beyond the use which its vested right encompasses. Lakeside's development plans go far beyond any natural expansion of the current nonconforming use. The changes which Lakeside proposes are not required for, nor are they reasonably related to, the continuation of the use that existed at the time the zoning ordinance was passed. Lakeside may not use its present nonconforming use to satisfy zoning ordinance requirements for a new use which was not in existence at the time the zoning ordinance was passed and the nonconformity established.

Denial of Lakeside's request for a special exception, because it did not conform to the density requirement of the zoning ordinance, does not restrict its vested right to continue its motel operation, nor does it require Lakeside to change, in any way, the manner in which the motel units are now situated upon the land. A special exception is a use permitted upon certain conditions as set forth in a town's zoning ordinance. 3 RATHKOPF, LAW OF ZONING AND PLANNING § 41.02 (1987). It is generally recognized in this State that, in considering whether to grant a special exception, zoning boards may not vary or waive any of the requirements as

set forth within the zoning ordinance. *Shell Oil Co. v. Manchester*, 101 N.H. 76, 78, 133 A.2d 501, 502 (1957); *Stone v. Cray*, 89 N.H. 483, 487, 200 A.2d 517, 521 (1938). A zoning ordinance is not discriminatory because it permits the continuation of existing structures and conditions while prohibiting the creation of new structures or conditions of the same type. *Stone, supra* at 485, 200 A.2d at 520. If Lakeside seeks permission to act outside the ordinance, it may apply for a variance from the density requirements of the ordinance. *New London v. Leskiewicz*, 110 N.H. at 466, 272 A.2d at 859.

Zoning, by its nature, is restrictive. Although zoning ordinances may expressly permit the continuation of nonconforming uses, such uses by their very nature violate the spirit of zoning laws. *Flanagan v. Hollis*, 112 N.H. 222, 224, 293 A.2d 328, 329 (1972). Therefore, it is the policy of zoning law to construe strictly zoning ordinance provisions which provide for the continuation of nonconforming uses. *Keene v. Blood*, 101 N.H. 466, 469, 146 A.2d 262, 264 (1958). The policy of zoning law is to carefully limit the enlargement and extension of nonconforming uses. *Arsenault v. Keene*, 104 N.H. 356, 359, 187 A.2d 60, 62 (1962); *Ackley v. Nashua*, 102 N.H. 551, 554, 163 A.2d 6, 9 (1960). The "ultimate purpose of zoning regulations [contemplates that nonconforming uses] should be reduced to conformity as completely and rapidly as possible. . . ." 82 AM. JUR. 2d *Zoning and Planning* § 191 (1976).

In essence, the board allowed Lakeside to use its prior nonconforming use to satisfy a requirement for a special exception. By granting a special exception, the board would allow Lakeside to substantially change and unnaturally expand upon its prior nonconforming use. We hold that the board erred in its interpretation of the basic character of nonconforming uses and of those circumstances under which nonconforming uses may be continued. Accordingly, we reverse the trial court's decision upholding the board's grant of a special exception to Lakeside.

*Reversed.*

JOHNSON, J., did not sit; BROCK, C.J., dissented; the others concurred.

BROCK, C.J., dissenting: There are two recognized nonconforming uses on this property: one is its commercial nonconformity as a motel and the other is its density nonconformity. The plaintiff's sole challenge as to nonconforming use is to density; specifically, the

appropriateness of using the density nonconformity to satisfy the zoning ordinance special exception, which requires a density of one family per two acres. The plaintiff does not argue that the existing nonconforming use of one family per acre will be changed. Rather, the plaintiff argues that Lakeside should not be allowed to satisfy the special exception with this nonconforming density use because the zoning ordinance requires otherwise. In adopting the plaintiff's argument, the majority holds that a subsequently enacted zoning ordinance may defeat a vested preexisting nonconforming use right as to density. I do not believe that the law supports such a holding.

The majority recognizes that a nonconforming use right is a vested right and is protected under our statutes, previous case law, and the State Constitution. N.H. CONST. pt. I, arts. 2 and 12; *Town of Hampton v. Brust*, 122 N.H. 463, 468, 466 A.2d 458, 460 (1982); RSA 674:19. Once the right to a use is acquired, any zoning ordinance enacted subsequently which would prevent that use is inapplicable to the party having the right to the use. *Brust supra.* Therefore, Lakeside's preexisting nonconforming use as to density, of one family per acre, is valid as a vested right that predates the zoning ordinance. *See Durham v. White Enterprises, Inc.*, 115 N.H. 645, 650–51, 348 A.2d 706, 710 (1975). The limitation on nonconforming use rights provides that so long as a party does not substantially change the nature and purpose of the use, it may continue to enjoy that use. *Brust supra.*

In this case, I believe that the board ruled correctly that Lakeside's preexisting nonconforming use of the property as to density could validly be applied against the zoning ordinance requirement of a density of one family per two acres. Contrary to the position adopted by the majority, this does not amount to a change in use. The plaintiff concedes that a change from motels to condominiums is permissible because it only results in a change of ownership. *Town of Seabrook v. Tra-Sea Corp.*, 119 N.H. 937, 943, 410 A.2d 240, 243 (1979).

The majority reaches its conclusion by confusing, I believe, the nonconforming density use of the property with its nonconforming commercial use, and compounds the problem by adding a discussion pertinent only to nonconforming structures. The plaintiff does not challenge the motel structure itself, and an analysis of structures, in any event, is irrelevant to a discussion of nonconforming uses.

In all other respects, except density, the proposed condominium development meets the special exception requirements. The board's findings recited numerous detailed assurances, which it received into evidence and incorporated by reference, before concluding that a shift from a nonconforming commercial operation to residences would benefit the area. The board noted that the completed project had to be in compliance with the statements, representations, and descriptions presented by, among others, the architects for the developer as well as pertinent cited portions of the zoning ordinance. The board also made findings that the condominiums would be in harmony with the surrounding area and the orderly development of the Agricultural Rural Residential district, and would not have an adverse effect on the environment, the future development of adjacent lands, or the value of surrounding property. The board's findings of fact are deemed *prima facie* lawful, and I find no error by the board or the court that would lead to the contrary position adopted by the majority. Respectfully, therefore, I dissent.