Cheshire
No. 92-201

DAVID A. POPE

v.

TOWN OF HINSDALE PLANNING BOARD & a.

May 20, 1993

*Bianco Professional Association*, of Concord (*Eric G. Falkenham* on the brief and orally), for the plaintiff.

*Bragdon, Berkson & Davis, P.C.*, of Keene (*James Romeyn Davis* and *Carol MacKinnon* on the brief, and *Mr. Davis* orally), for the defendants.

*Judy A. Silva*, of Concord, by brief for the New Hampshire Municipal Association, as *amicus curiae*.

JOHNSON, J.   The plaintiff, David A. Pope, desires to expand his manufactured housing park, located in Hinsdale. The defendants, the Town of Hinsdale Planning Board and its individual members (the board), denied Pope's request for a certificate of compliance, a prerequisite to expansion under a previous version of the Town of Hinsdale's (town) zoning ordinance. Pope appealed the denial to the superior court and petitioned for declaratory judgment and injunctive relief. After the Superior Court (*Hollman*, J.) denied all of his requests for relief, Pope appealed to this court. The sole, narrow issue before us is whether the town's current zoning ordinance (ordinance), which forbids expansion of manufactured housing parks, violates RSA 674:32 (Supp. 1992), which requires "[m]unicipalities permitting manufactured housing parks [to] afford realistic opportunities for the development and expansion of manufactured housing parks." More specifically, because there is no dispute that the town does *not* "afford realistic opportunities for the development and expansion of manufactured housing parks," we must simply decide whether the town is a "[m]unicipalit[y] permitting manufactured housing parks." We hold that it is not and, therefore, affirm the supe-

rior court's ruling that the ordinance does not violate RSA 674:32 (Supp. 1992).

RSA 674:32 (Supp. 1992) provides in full:

"Municipalities shall afford reasonable opportunities for the siting of manufactured housing, and a municipality shall not exclude manufactured housing completely from the municipality by regulation, zoning ordinance or by any other police power. A municipality which adopts land use control measures shall allow, *in its sole discretion,* manufactured housing to be located on individual lots in most, but not necessarily all, land areas in districts zoned to permit residential uses within the municipality, *or* in manufactured housing parks and subdivisions created for the placement of manufactured housing on individually owned lots in most, but not necessarily all, land areas in districts zoned to permit residential uses within the municipality, *or* in all 3 types of locations. Manufactured housing located on individual lots shall comply with lot size, frontage requirements, space limitations and other reasonable controls that conventional single family housing in the same district must meet. No special exception or special permit shall be required for manufactured housing located on individual lots or manufactured housing subdivisions unless such special exception or permit is required by the municipality for single family housing located on individual lots or in subdivisions. *Municipalities permitting manufactured housing parks shall afford realistic opportunities for the development and expansion of manufactured housing parks.* In order to provide such realistic opportunities, lot size and overall density requirements for manufactured housing parks shall be reasonable."

(Emphasis added.) The pertinent portions of the town zoning ordinance at issue are as follows:

"1. No person, persons, firm or corporation shall establish or operate a *new manufactured housing park* within the Town of Hinsdale.

2. *No permit for a new manufactured housing park or for the enlargement or expansion of an existing manufactured housing park shall be issued in the Town of Hinsdale.*

a. *Any person operating a manufactured housing park at the time of adoption of this ordinance shall be entitled, to a special manufactured housing park permit.* The process-

ing fee of a special manufactured housing park permit shall be $250.00, renewable every five years. Such permit shall authorize the continuing operation of the manufactured housing park in substantially the same manner as existed at the date of the adoption of this ordinance, subject only to any overriding limitations of applicable state law. A special manufactured housing park permit does not entitle the holder to enlarge or expand the number of lot locations within the park or to enlarge the area of the park by purchasing additional land, or substantially altering the manner of operation of such pre-existing manufactured housing park."

(Emphasis added.)

■ Pope argues on appeal that the town is a "[m]unicipalit[y] permitting manufactured housing parks" because it permits the continued existence of his park as a nonconforming use, created prior to the adoption of the ordinance. To the contrary, we find that the park's status as a former conforming use, now merely a grandfathered use, militates against adopting his argument. "Generally, the right to continue a previously lawful use of one's property after enactment of a zoning ordinance that prohibits such use is a vested right recognized by the New Hampshire Constitution and our New Hampshire statutes." *New London Land Use Assoc. v. New London Zoning Board*, 130 N.H. 510, 516, 543 A.2d 1385, 1387 (1988). Pope's "right to continue" his manufactured housing park as a grandfathered use precludes any notion that the town "permits" the use. The town has no choice in the matter. The town lacks the authority to close Pope's park, and it therefore is inappropriate to characterize the town's recognition of Pope's vested right to continue his park as "permitting manufactured housing parks." RSA 674:32 (Supp. 1992). As the zoning ordinance states unequivocally, no "new manufactured housing park" may be established in Hinsdale.

■ Pope also argues that the town is a "[m]unicipalit[y] permitting manufactured housing parks" because the town issued him a written permit for his park pursuant to the ordinance. Again, we find Pope's interpretation of the word "permitting" strained. Although the town's ordinance does allow the town to issue permits for pre-existing manufactured housing parks, this is not equivalent to the town "permitting manufactured housing parks." As noted above, the town has absolutely no choice but to accept the existence of Pope's park. The provision of the ordinance relating to permits is merely an

exercise of the town's limited power to regulate what it cannot eliminate. *See Amherst v. Cadorette,* 113 N.H. 13, 15–16, 300 A.2d 327, 329 (1973).

■ Principles of zoning law also cause us to reject Pope's interpretation of the town's ordinance. "The policy of zoning law is to carefully limit the enlargement and extension of nonconforming uses." *New London Land Use Assoc.,* 130 N.H. at 518, 543 A.2d at 1389. Pope's interpretation of the phrase "[m]unicipalities permitting manufactured housing parks" would directly subvert these principles by forcing municipalities with grandfathered manufactured housing parks to allow them forever to expand. Therefore, we reject Pope's position.

■ Pope also argues that it would violate the intent of the legislature to interpret the word "permitting" in RSA 674:32 (Supp. 1992) to allow a municipality to forbid expansion of manufactured housing parks. This court, of course, is the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *Appeal of Manchester Bd. of School Comm.,* 129 N.H. 151, 152, 523 A.2d 114, 115 (1987). The first sentence of RSA 674:32 (Supp. 1992) plainly communicates the legislature's purpose: "Municipalities shall afford reasonable opportunities for the siting of manufactured *housing,* and a municipality shall not exclude manufactured *housing* completely from the municipality by regulation, zoning ordinance or by any other police power." (Emphasis added.) Significantly, the statute evinces an intent to "afford reasonable opportunities for the siting of manufactured *housing,*" RSA 674:32 (Supp. 1992) (emphasis added), not manufactured housing *parks.* Thus, we find nothing in the legislature's expressed intent to support Pope's argument that the town must allow expansion of its existing manufactured housing parks.

■ Pope also maintains that the legislative history of RSA 674:32 (Supp. 1992) bolsters his position. Assuming for the sake of argument that the word "permitting" here is ambiguous, *Blanchard v. Blanchard,* 133 N.H. 427, 430–31, 578 A.2d 339, 342 (1990), we find nothing in the statute's legislative history to help Pope. Pope does not refer us to any history explaining the use of the word "permitting," but notes that the legislature made several changes to the statute in 1986. *Compare* RSA 674:32 (1986) with RSA 674:32 (Supp. 1992). These changes were apparently made because the legislature felt that some municipalities were violating the spirit of the law, if not its letter, thus frustrating the stated goal of providing "reasonable opportunities for the siting of manufactured housing." *See* Laws

1986, 91:1. None of these changes, however, includes the addition of the sentence at issue here. That sentence was added in 1987, without explanation. *See, e.g.,* N.H.H.R. JOUR. 906 (1987).

Moreover, as explained above, the goal of the legislature in enacting RSA 674:32 (Supp. 1992) was to provide "reasonable opportunities for the siting of manufactured *housing*," RSA 674:32 (Supp. 1992) (emphasis added), not necessarily manufactured housing *parks*. Interpreting the word "permitting" to allow a municipality to eliminate expansion of existing manufactured housing parks does not violate this goal so long as the municipality allows manufactured housing in some other form. The statute itself, after all, expressly allows a municipality to satisfy the goal by choosing, "in its sole discretion," one of three options. RSA 674:32 (Supp. 1992). The first option is to allow manufactured housing on individual lots. A municipality choosing this option may prohibit manufactured housing parks and still comply with the letter and the spirit of the statute. Pope does not dispute that the town currently allows manufactured housing on individual lots. Accordingly, we reject Pope's argument that the legislative history of RSA 674:32 (Supp. 1992) advances his interpretation of the word "permitting."

■ We hold that the superior court properly ruled that the town's ordinance does not violate RSA 674:32 (Supp. 1992). The town is not a "[m]unicipalit[y] permitting manufactured housing parks," and therefore RSA 674:32 (Supp. 1992) does not obligate the town to "afford realistic opportunities for the development and expansion of manufactured housing parks."

*Affirmed.*

HORTON, J., with whom BATCHELDER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: In RSA 674:32 (Supp. 1992), the legislature mandated that any municipality "permitting manufactured housing parks shall afford realistic opportunities for the development and expansion of manufactured housing parks." There is no question that the Town of Hinsdale, in its 1989 amendment to its zoning ordinance, eliminated any "realistic opportunity for development or expansion" when it provided "[n]o permit for a new manufactured housing park or for the enlargement or expansion of an existing manufactured housing park shall be issued in the Town of Hinsdale." The question remains whether Hinsdale is a municipality "permitting manufactured housing parks"? I would find that it is.

First, I would find that once a municipality has elected to satisfy its manufactured housing obligation under RSA 674:32 by permitting the establishment of manufactured housing parks, it is thereafter charged, by that statute, with providing the "realistic opportunities" for those parks established. We should not countenance allowing a municipality, which has permitted establishment of parks, to summarily freeze the rights of those who acted under the park option by changing its pick on how it will satisfy its manufactured housing obligation. Mr. Pope acquired the manufactured housing park in 1983. Although the full history of the status of the park is not clear from my review of the record, the provisions of the 1985 Hinsdale ordinance, in effect prior to the challenged amendment, provided for "mobile home parks" by special exception. Pre-1989, manufactured housing parks were a permitted use.

Second, there is no question in my mind that, under the terms of the amended ordinance, existing manufactured housing parks are a permitted use. The prohibition against manufactured housing parks forbids the establishment or operation of a *new* manufactured housing park. Existing manufactured housing parks are expressly permitted by the terms of the ordinance and are, therefore, conforming uses. They are not categorized, either expressly or by implication, as nonconforming uses. The majority reasons that the permitted use language is, in reality, merely a restatement of what Hinsdale is required to accept under the law of nonconforming use. Many zoning ordinances deal with the issue of nonconforming uses by eliminating them from the terms of the ordinance. Other ordinances ignore the problem, realizing that enforcement may not be possible. The Hinsdale ordinance makes no mention of nonconforming use. It permits existing trailer parks under the terms of the ordinance and imposes a permitting requirement, including a substantial fee, every five years. The majority correctly defines a nonconforming, or grandfathered, use as continuing use of one's property after the enactment of a zoning ordinance that *prohibits* such use. Only new manufactured housing parks are prohibited. Existing manufactured housing parks are permitted and regulated. The regulation violates the terms of RSA 674:32.

I would reverse and remand.

BATCHELDER, J., joins in the dissent.