328

Rockingham
No. 99-283

TOWN OF SALEM

v.

RICHARD WICKSON

April 24, 2001

*Soule, Leslie, Kidder, Sayward & Loughman,* of Salem (*Diane M. Gorrow* on the brief and orally), for the plaintiff.

*Troisi & Sullivan,* of Salem (*James J. Troisi* on the brief), for the defendant.

DUGGAN, J. In this zoning case, the Town of Salem (town) appeals the Superior Court's (*Abramson,* J.) order dismissing its petition to enjoin the defendant, Richard Wickson, from stockpiling earthen materials on his property. The trial court ruled that the stockpiling activity was a pre-existing nonconforming use of the property and, therefore, Wickson had a right to continue that use. We reverse and remand.

Wickson owns a 4.1-acre vacant lot in Salem. In 1961, the town adopted a zoning ordinance that classified the lot as Rural District. In 1985, the town changed the lot's zoning classification from Rural District to Limited Community Shopping Village District. *See* SALEM, N.H., ZONING ORDINANCE art. IX, § 309-57 (1998). This change expanded the permissible uses for the lot, because the Limited Community Shopping Village District includes all uses permitted in the Rural District. *See id.* § 309-58 (1998). From 1959 through 1988, the lot contained a working farm, including pigs, that was allowed to continue as a pre-existing nonconforming use. *See* RSA 674:19 (1996); SALEM, N.H., ZONING ORDINANCE art. IX, § 309-57.1(A), art. IV, § 309-28 (1998). As part of the farm activities, horse, chicken and pig manure was stockpiled. In an effort to make this by-product of the farm marketable, sand and other materials were brought in to mix with the manure. This material was then trucked off the property to market. This activity continued through 1988.

In 1988, after receiving site plan approval to construct a nursery on the lot, Wickson removed the animals and buildings and the farming operation ceased. The nursery was never built. The lot, however, continued to be used for stockpiling a variety of earthen materials. In 1990, the town notified Wickson that the stockpiling activity was not a permitted use in the Limited Community Shopping Village District, and therefore required site plan approval. Wickson never applied for site plan approval.

The town filed a petition in superior court seeking to enjoin the stockpiling activity on the lot. Following a two-day evidentiary hearing, the court dismissed the town's petition on the basis that "the use of the subject property has been continuous and essentially unchanged since the 1950's [and that the testimony regarding the use] for stockpiling was uncontroverted." "We sustain the findings

and rulings of the trial court unless they are lacking in evidential support or tainted by error of law and we review the record in the light most favorable to the defendants." *Town of Seabrook v. Vachon Management*, 144 N.H. 660, 661 (2000) (quotation and citation omitted).

On appeal, the town argues that when Wickson abandoned the nonconforming farming use of the property, he also abandoned all nonconforming uses incidental to pig farming, including his right to stockpile earthen materials. Therefore, the continued stockpiling constitutes a substantial change in use. Wickson contends that when determining whether a substantial change in the nonconforming use has taken place, the trial court properly focused on the consistency of the use and not whether the use was incidental to the lot's use when the farm existed. Thus, no change has occurred because the stockpiling activity is comprised of manure being mixed with earthen products for commercial sale just as when the farm existed.

 Nonconforming uses relate to conditions that exist prior to the time a zoning ordinance is passed. RSA 674:19; *Hurley v. Town of Hollis*, 143 N.H. 567, 568 (1999). A nonconforming use is a lawful use existing on the land at the time an ordinance prohibiting that use is adopted. *Town of Seabrook*, 144 N.H. at 664. "The right to maintain nonconforming uses is meant to protect property owners from a retrospective application of zoning ordinances, so that property owners may continue using and enjoying their property when their uses were lawful prior to the enactment of a zoning ordinance . . . ." *New London Land Use Assoc. v. New London Zoning Board*, 130 N.H. 510, 516 (1988); *see* N.H. CONST. pt. I, arts. 2, 12 (providing all persons right to acquire, possess and protect property). RSA 674:19 protects that right by providing that zoning ordinances shall not apply to existing structures or uses, thereby creating a vested right to continue the prior lawful use of land. *New London Land Use Assoc.*, 130 N.H. at 516. Because the general policy of zoning law, however, is "to carefully limit the extension and enlargement of nonconforming uses, we strictly construe provisions that permit the continuance of such uses, [and] the party asserting that a proposed use is not new or impermissible bears the burden of proof." *Town of Seabrook*, 144 N.H. at 664 (quotation and citation omitted). Therefore, an extension and enlargement that substantially changes the nature and purpose of the nonconforming use is impermissible. *See New London Land Use Assoc.*, 130 N.H. at 516; *id.* at 519 (Brock, C.J., dissenting).

The creation of a nonconforming use depends upon the facts existing at the time the change in the zoning ordinance created the

nonconforming use. *Id.* at 516. Here, the nonconforming use was created in 1961 when the town adopted a zoning ordinance that placed this lot in the Rural District. The Rural District specifically excluded pig farms. A pig farm had existed on this lot at least since 1959. This nonconforming use still existed in 1985 when the area was rezoned as a Limited Community Shopping Village District. In 1988 or 1989, all the animals, including the pigs, were removed. Before removal of the animals, materials brought in from other sites were mixed with manure and then sold commercially. After 1989, all material stockpiled on-site and subsequently sold was brought in from off-site. On average, this activity consisted of twenty-five eighteen-wheel truckloads per week.

■ In determining whether there has been a substantial change in the nature or purpose of the pre-existing nonconforming use, "we consider: (1) the extent the use in question reflects the nature and purpose of the prevailing nonconforming use; (2) whether the use at issue is merely a different manner of utilizing the same use or constitutes a use different in character, nature, and kind; and (3) whether the use will have a substantially different effect on the neighborhood." *Hurley*, 143 N.H. at 571-72.

We first consider the nature and purpose of the prevailing nonconforming use when the zoning ordinance went into effect in 1961. Wickson testified, and an aerial photograph indicated, that the nature and purpose of the nonconforming use in 1961 was for pig farming. Wickson gave a detailed explanation of how the manure was removed from the barns and stockpiled on the back of the lot. In order to dry out the manure, sand was brought in, and to make the product marketable, other types of soils were added. Wickson repeatedly testified that the stockpiling was related to the farming activities. Thus, the record clearly shows that the nature and purpose of the nonconforming use in 1961 was for pig farming and that the stockpiling activity was incidental and subordinate to the farming activity. *Compare Hannigan v. City of Concord*, 144 N.H. 68, 72 (1999) (concluding maintenance building incidental and subordinate to operation of golf course) *with Becker v. Town of Hampton Falls*, 117 N.H. 437, 440 (1977) (concluding heavy commercial equipment storage not incidental and subordinate to residential use).

Other courts have adopted a firm rule that a nonconforming use that is incidental and subordinate to a principal use can never be converted to a principal nonconforming use. *See, e.g., Stokes v. Zoning Bd. of Adjustment*, 167 A.2d 316, 317 (Pa. 1961); 7 P. ROHAN,

ZONING AND LAND USE CONTROLS § 41.03[3], at 101 (1996). Although this court has not previously adopted such a rule, the town in its brief asks us to do so now. The town, however, raised this for the first time in its brief, and therefore we decline to address it. *See* SUP. CT. R. 16(3)(b); *Anglin v. Kleeman*, 140 N.H. 257, 263 (1995).

We now consider whether the use at issue constitutes a use different in character, nature, and kind. The town argues that the new use of the lot for commercial stockpiling is not substantially similar to the prior use, because the prior stockpiling was incidental to the primary use for pig farming. In 1961, the stockpiling activity related to the manner in which the property was used. The farm at that time had approximately sixty-five pigs. On this part of the property, chicken brooder houses were used to house sows and suckling pigs. By 1989, however, Wickson had intentionally discontinued all farming activities on the lot. Consequently, he abandoned his right to continue the nonconforming use for pig farming. *See Lawlor v. Town of Salem*, 116 N.H. 61, 62-63 (1976). Despite abandoning his right to use the lot for pig farming, Wickson asserts he never abandoned his right to use the lot for stockpiling. Rather, he argues that the nature of the stockpiling activity remains substantially unchanged.

■ The character and nature of the stockpiling in 1961 was incidental to the nonconforming use of the property for pig farming. At that time, earthen materials were stockpiled on the lot to assist in removing a by-product of the principal pig farming activity. The character and nature of the stockpiling after 1989 is wholly unrelated to pig farming, and all materials are brought in from off-site. The change in the character and nature of the stockpiling is vividly illustrated by comparing the photographs of the activities on the lot in 1959 with the photographs depicting the activities after 1989. Thus, the trial court's finding that the use has remained essentially unchanged since 1959 is not supported by the evidence.

Wickson's assertion that any use that is "similar" to the nonconforming use for stockpiling is a natural expansion of that nonconforming use misconstrues the purpose of the right to continue a pre-existing lawful use. The right to continue a pre-existing lawful use vests in the property because "a substantial reliance has been placed upon that use . . . *at the time* the ordinance creating the nonconforming use is enacted." *New London Land Use Assoc.*, 130 N.H. at 516 (emphasis added). Accordingly, "[n]onconforming uses may be expanded, where the expansion is a natural activity, closely related to the manner in which a piece of property is used at the

time of the enactment of the ordinance creating the nonconforming use." *Id.; see, e.g., Conforti v. City of Manchester*, 141 N.H. 78, 81-82 (1996) (establishing substantial similarity requires more than broad assertion that use is generically similar to prevailing nonconforming use). Here, any claim that substantial reliance had been placed upon the use of the lot for stockpiling was directly related to the nonconforming use of the property as a pig farm. The fact that the stockpiling activity of mixing manure with earthen materials has continued without interruption is irrelevant, because the right that vested with the property was to continue pig farming. Therefore, unless the stockpiling is closely related to the pig farming, it is not the expansion of a natural activity closely related to the nonconforming use.

Finally, we consider whether the use has a substantially different effect on the neighborhood. In the 1959 aerial photo, the stockpiles are located near farm buildings. These farm buildings and trees on the property screened passersby and neighbors from viewing the activity. In 1989, all the buildings and trees near the stockpiling activity were removed and the lot completely excavated. Moreover, although Wickson maintains that trucks were brought in 1961 to deliver sand and other materials to mix with the manure before the final product was removed, it is inconceivable that sixty-five pigs could create enough waste to require anywhere near the twenty-five eighteen-wheel truckloads per week involved in the new stockpiling operation. Clearly, the new stockpiling activity has a substantially different effect on the neighborhood.

Consistent with the general policy of zoning law to carefully limit the enlargement and extension of nonconforming uses, we conclude that this new use for commercial stockpiling is not substantially similar to the prevailing use at the time the nonconforming use was created. Accordingly, we reverse the superior court's ruling that Wickson has a right to continue stockpiling because it was a lawful pre-existing nonconforming use and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.