Cheshire
No. 81-329

FRANCIS J. GRONDIN & a.
d/b/a/ RIVERVIEW PARK

v.

TOWN OF HINSDALE & a.

October 14, 1982

*Cooper, Hall & Walker*, of Rochester (*Mark S. Moeller* on the brief and orally), for the plaintiffs.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Arthur G. Greene* and *Daniel F. Lyman* on the brief, and *Mr. Greene* orally), for the defendants.

DOUGLAS, J. The plaintiffs appeal the Superior Court's (*Pappagianis*, J.) decision upholding the denial of a special exception to permit them to operate mobile homes in their mobile home park, despite the defendant town's ceiling on the number of mobile home permits. Because we hold that the plaintiffs had a vested property right to run their mobile home park prior to the adoption of the permit ceiling, we reverse and remand.

The plaintiffs, Francis Grondin and Roger Daigle, own and operate Riverview Park, a mobile home park located in the town of Hinsdale. Riverview Park, Inc., the plaintiffs' predecessor in interest, purchased the 100-acre park property in December 1966 and developed 156 mobile home sites. The town enacted two ordinances in 1970 which affected mobile homes. On April 4, 1970, a zoning ordinance was enacted regulating the establishment and enlargement of mobile home parks. The zoning ordinance "grand-fathered" parks already in existence and provided, in part, for their

continued operation "in substantially the same manner as existed at the date of adoption of this Ordinance. . . ." The second ordinance, enacted by the town on June 20, 1970, pursuant to the general police powers granted by RSA 31:39, established a system for the issuance of 350 mobile home permits on a first-come, first-served basis to mobile home owners who had complied with all zoning ordinance requirements.

Riverview Park, Inc., desiring to expand its park beyond the 156 sites then in existence, sued the town in 1972. In *Riverview Park, Inc. v. Hinsdale*, 113 N.H. 693, 313 A.2d 733 (1973), we held that Riverview Park, Inc. had no vested property right to expand its park beyond the 156 sites in place at the time the town's zoning ordinance was enacted. *Id.* at 695, 313 A.2d at 734–35. We also held in that case that the numerical limit placed on mobile home permits was not an arbitrary and unreasonable exercise of the town's police powers. *Id.* at 696, 313 A.2d at 735.

The plaintiffs purchased Riverview Park in August 1979 from intermediate owners. At all times the property has been operated as a mobile home park.

In February 1980, the plaintiffs petitioned the defendant Hinsdale Zoning Board of Adjustment (board) for a special exception, as provided by the town's zoning ordinance, to authorize the issuance of up to 156 mobile home permits for the 156 approved sites at Riverview Park. As of that date, however, all 350 permits had been issued, thereby excluding any new mobile homes until existing ones were removed from the town. After a hearing, the board denied the plaintiffs' petition and their motion for a rehearing. The superior court ruled that the board had no power to grant a special exception because such power, derived from RSA 31:72, was limited to zoning ordinances and that the permit-limitation ordinance neither was a zoning ordinance nor contained any conditions of its own for the granting of a special exception. The superior court, treating the plaintiffs' pleadings as a petition to enjoin the town's interference with their vested right, further refused to exempt the plaintiffs from complying with the town's 350-permit limit on mobile homes. On appeal, the plaintiffs argue that the town, when enacting the 350-permit ceiling, failed to take into account Riverview Park's vested property right in the 156 mobile home park sites which became valid, nonconforming uses under the April 1970 ordinance. We agree.

The fundamental and inalienable property right that vests in a property owner has as its foundation this State's Constitution. Part I, article 2 of the New Hampshire Constitution guarantees all

persons the right to acquire, possess, and protect property. This guarantee has been deemed so specific as to " 'necessarily limit [] all subsequent grants of power to deal adversely with it.' " *Metzger v. Town of Brentwood*, 117 N.H. 497, 502, 374 A.2d 954, 957 (1977) (quoting *Woolf v. Fuller*, 87 N.H. 64, 68, 174 A. 193, 196 (1934)). Similarly, every person has the right to have his enjoyment of property protected. N.H. CONST. part I, art. 12. "These two constitutional provisions are limitations upon the so-called police power of the State and subdivisions thereof, and nullify arbitrary legislation passed under the guise of that power." *L. Grossman & Sons, Inc. v. Town of Gilford*, 118 N.H. 480, 482–83, 387 A.2d 1178, 1180 (1978).

■■ When this case was before us nine years ago, we held that the mobile-home-permit limitation *per se* was not an unreasonable or arbitrary exercise of the police power. *Riverview Park, Inc. v. Hinsdale*, 113 N.H. at 696, 313 A.2d at 735. We noted in *Metzger v. Town of Brentwood*, however, that our inquiry into the validity of municipal restrictions on individual land use does not stop at the face of an ordinance: "The real question is whether, even assuming that the ordinance does generally promote . . . [the] public interests [of health, safety, and general welfare], it is nevertheless arbitrary and unreasonable *as applied* to the plaintiffs' land." *Metzger v. Town of Brentwood*, 117 N.H. at 501, 374 A.2d at 957 (emphasis added). Long ago, we established that property rights include the right to use and enjoy a thing and are not limited to possessing it. *Id.* at 502, 374 A.2d at 957–58 (citing *Eaton v. B.C. & M.R.R.*, 51 N.H. 504, 511 (1872)).

■ To the extent we upheld the validity of the town's permit-limitation ordinance in 1973, we hold today that the town's *application* of that ordinance to the plaintiffs' 156 developed mobile home sites interferes with their vested property right and is invalid. The superior court concluded that if "the plaintiffs can again attract 156 mobile homes to their park, within the 350 home limit, they continue to have the right to maintain them there." But this recognition of the plaintiffs' vested right is more apparent than real. When the town enacted its zoning ordinance in April 1970, Riverview Park, Inc., was vested with the right to operate its property as a mobile home park to the fullest extent of its developed sites at that time. *Riverview Park, Inc. v. Hinsdale*, 113 N.H. at 695, 313 A.2d at 734–35. This means that the plaintiffs' predecessor in interest was guaranteed the right not only to maintain 156 mobile home sites but also to lease those sites and operate them without interference from the town. The town may not impose "arbitrary or

unreasonable restrictions which substantially deprive the owner of 'the economically viable use of his land' in order to benefit the public in some way. . . ." *Burrows v. City of Keene*, 121 N.H. 590, 598, 432 A.2d 15, 20 (1981). The town's refusal, under its police power, to grant permits for the location and operation of mobile home parks on the plaintiffs' 156 developed and approved sites is no more permissible than it would have been for the town to enact a zoning ordinance prohibiting the use of the plaintiffs' land as a mobile home park. "In other words, it cannot do indirectly that which it cannot do directly." *Id.* at 597, 432 A.2d at 19.

In *Riverview Park*, we reversed the trial court's ruling "that the plaintiffs were not subject to the ordinance adopted in June 1970, . . . limiting the number of such permits to be issued to 350." 113 N.H. at 695–96, 313 A.2d at 735. Implicit in this statement was the fact that the town had set aside permits for the 156 developed sites in Riverview Park for which permits had not already been issued. Compliance with the 350-permit limit was merely a necessary corollary to our holding there that Riverview Park, Inc., had no vested right to develop more than the 156 sites existing when the town enacted its zoning ordinance. Contrary to the interpretation of that language by the superior court in the instant case, we did not intend only that "no reduction in the number of [mobile] homes then existing in Riverview Park would be required."

We cannot accept the defendants' suggestion that recognition of the plaintiffs' vested right to operate 156 mobile homes, irrespective of the town's 350-permit limit, will lead to "unbridled uses" of the property. Initially, no mobile home owner can obtain a permit without first complying with the zoning ordinance's location and maintenance requirements. Additionally, we assume that the town already has in place less intrusive alternatives to the denial of occupancy permits, such as health and safety code enforcement procedures, which do not so substantially interfere with the plaintiffs' vested property right. The denial of mobile home permits, which in recent years have become available in the town at a rate of no more than three or four per year, amounts to more than the partial limitation of "the fullest exploitation of a nonconforming use" suggested by the defendants' counsel. The town's refusal to issue the necessary permits to the plaintiffs interferes with the very purpose for which their property was developed and impermissibly infringes upon their vested property right.

It is well established that the plaintiffs, as successors in interest, are entitled to exercise all the vested rights which

belonged to the original developer, assuming the nonconforming use continued uninterrupted and without abandonment. *Lawlor v. Town of Salem*, 116 N.H. 61, 62, 352 A.2d 721, 722–23 (1976); *see Henry and Murphy, Inc. v. Town of Allenstown*, 120 N.H. 910, 913, 424 A.2d 1132, 1134 (1980). It is undisputed that the plaintiffs' property has been used continuously as a mobile home park since enactment of the town's zoning ordinance in April 1970.

The mobile-home-limitation ordinance vests authority for the issuance of permits in the town selectmen. We reverse and remand to the superior court for proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.