Hillsborough-northern judicial district
No. 2004-256

### CARROLL J. GREENE

### v.

### TOWN OF DEERING & a.

### 47 RESIDENTS OF DEERING, N.H.

### v.

### TOWN OF DEERING & a.

Argued: October 20, 2004
Opinion Issued: March 3, 2005

*G.E. Michael, PA*, of Merrimack (*Patricia Panciocco* on the brief, and *Gregory E. Michael* orally), for appellee Town of Deering Zoning Board of Adjustment.

*Leesteffy Jenkins*, of Hillsborough, by memorandum of law and orally, for appellees 47 Residents of Deering, N.H.

*Brown, Olson & Wilson, P.C.*, of Concord (*David J. Shulock* on the brief and orally), for the appellant, Carroll J. Greene.

DALIANIS, J. The appellant, Carroll J. Greene, appeals an order of the Superior Court (*Barry*, J.) upholding a decision of appellee Town of Deering Zoning Board of Adjustment (ZBA), which found that Greene had unlawfully expanded his non-conforming use, and ruling that he had no right to continue to operate his commercial junkyard. We reverse and remand.

The record reflects the following facts. On March 13, 2001, the Town of Deering (town) adopted the Deering Zoning Ordinance, which predicated the issuance of a commercial junkyard license, by the town's selectmen, upon certain conditions. Additionally, the ordinance provided for the issuance of a license to a previously operating commercial junkyard that "lawfully existed" on the date of the enactment of the ordinance. The ordinance provided that persons not "legally operating" a commercial junkyard as of that date had to comply with additional provisions to obtain a license. Greene, who had been operating a commercial junkyard prior to March 13, 2001, applied for a license to continue to operate his junkyard. On March 30, 2001, the selectmen approved the issuance of Greene's license, noting that Greene's use was "grandfathered." On March 29, 2002, the selectmen renewed that license.

After appellees 47 Residents of Deering, N.H. (the residents) voiced concerns about the March 29, 2002 renewal, a hearing was held. On

September 18, 2002, the selectmen decided not to revoke the license. On November 7, 2002, the residents appealed the selectmen's decisions of March 30, 2001, March 29, 2002, and September 18, 2002, to the ZBA.

The ZBA declined to address the appeal of the March 30, 2001 decision, concluding that it had not been timely filed and that consideration of the license was moot, as it had expired one year after its issuance. The ZBA accepted the appeals of the other decisions, however, and overturned the selectmen's March 29, 2002 decision to renew Greene's license. The ZBA found that Greene had increased his inventory in violation of a provision of the Aquifer Protection Ordinance (APO) that prohibited the expansion of certain non-conforming uses, including Greene's junkyard. The ZBA concluded that this prohibited expansion occurred prior to the effective date of the Deering Zoning Ordinance, and therefore Greene's junkyard was not "lawfully existing" as of the effective date of the Deering Zoning Ordinance. The ZBA concluded that the selectmen could not issue Greene future junkyard licenses unless Greene complied with the additional provisions of the Deering Zoning Ordinance applicable to junkyards that were not "legally operating" on the effective date of the ordinance. Greene appealed to the superior court, which upheld the ZBA's decision. This appeal followed.

On appeal, Greene argues that the trial court erred by not reversing the ZBA's decisions: (1) that it had subject matter jurisdiction to hear the residents' appeals; (2) to waive the filing deadline for the residents' appeals; (3) that the Deering Zoning Ordinance required the selectmen to determine whether Greene had a "lawfully existing" use as of March 13, 2001, each time they reissued his license; and (4) that Greene had unlawfully expanded his non-conforming use in violation of the APO prior to March 13, 2001. Greene also challenges the trial court's decision that his unlawful expansion completely divested him of his right to operate a junkyard, and its dismissal, as moot, of his request for a declaration as to the number of cars that he may maintain on his lot without violating the APO, and his request for an injunction prohibiting the town from enforcing its zoning ordinance against him. For the reasons that follow, we need only address Greene's first three arguments.

Judicial review of zoning cases is limited. The party seeking to set aside a zoning board of adjustment's decision has the burden to show that it is unlawful or unreasonable. In the trial court, the appealing party must demonstrate that an error of law was committed or persuade the court by the balance of probabilities that the board's decision was unreasonable. We

will uphold the trial court's decision unless it is not supported by the evidence or is legally erroneous. *Fox v. Town of Greenland*, 151 N.H. 600, 603 (2004).

Greene first argues that the ZBA lacked subject matter jurisdiction to hear the residents' appeals of the selectmen's March 2002 decision to grant him a junkyard license and September 2002 decision not to revoke that license. The ZBA determined that it had jurisdiction pursuant to RSA 676:5 (1996). Greene contends that the appeals should instead have been governed by RSA 236:121 (1993), RSA 236:123 (1993), or RSA 236:129 (1993). We disagree.

We are the final arbiter of the meaning of a statute as expressed in the words of the statute itself. When construing the meaning of a statute, we first examine its language and, where possible, ascribe the plain and ordinary meanings to words used. When the language used in the statute is clear and unambiguous, its meaning is not subject to modification by judicial construction. *In re Sandra H.*, 150 N.H. 634, 641 (2004).

█ RSA 236:121 provides recourse to the superior court for a licensee whose application for a junkyard license is denied, not for persons other than the licensee who are affected by the denial or granting of a license. Therefore, it did not address the residents' appeals. RSA 236:123 provides recourse to the superior court for any citizen who wishes to contest fencing for a new junkyard. The residents' appeals did not concern fencing.

█ RSA 236:129 provides recourse to the superior court in the form of injunctive relief to "[a]ny person owning real property whose property is directly affected by the site of a junk yard ... maintained in violation" of the Motor Vehicle Recycling Yards and Junk Yards subdivision, RSA 236:111-:129 (1993 & Supp. 2004). However, RSA 236:124 provides that the "subdivision is not in derogation of zoning ordinances or ordinances for the control of junk yards ... but rather is in aid thereof. Specific local ordinances shall control when in conflict with this subdivision." The residents were not seeking an injunction for Greene's violation of a provision of the subdivision; rather, they sought review of the selectmen's interpretation of zoning ordinances in the decision to reissue Greene's license. Therefore, RSA 236:129 did not address the residents' appeals.

Instead, as the ZBA and trial court correctly determined, RSA 676:5 addressed the residents' appeals. RSA 676:5, I, provides, "Appeals to the board of adjustment concerning any matter within the board's powers as set forth in RSA 674:33 may be taken by any person aggrieved ... by any decision of the administrative officer." RSA 674:33, I(a) (1996) provides

that the zoning board of adjustment has the power to "[h]ear and decide appeals if it is alleged there is an error in any . . . decision . . . made by an administrative officer in the enforcement of any zoning ordinance adopted pursuant to RSA 674:16. . . ." RSA 676:5, II(a) defines an "Administrative Officer" as any "board who. . . has responsibility . . . for enforcing the ordinance, and may include a . . . board of selectmen." RSA 676:5, II(b) provides that a "decision of the administrative officer" includes "any decision involving construction, interpretation or application of the terms of the ordinance."

By construing the above statutes together, we conclude that a zoning board of adjustment has the power to hear and decide appeals if it is alleged that a board of selectmen erred in its interpretation, construction or application of a zoning ordinance when making a decision involving the enforcement of that ordinance. Assuming, as no party argues otherwise, that the zoning ordinances here at issue were adopted pursuant to RSA 674:16, we conclude that the ZBA had authority, under RSA 676:5, to hear the residents' appeals of the selectmen's March and September 2002 decisions.

Greene's second argument is that even if the ZBA had subject matter jurisdiction under RSA 676:5, the residents' appeals were not timely filed, and the ZBA had no authority to waive the filing deadline. RSA 676:5, I, provides that an appeal to a zoning board of adjustment "shall be taken *within a reasonable time, as provided by the rules of the board,* by filing with the officer from whom the appeal is taken and with the board a notice of appeal specifying the grounds thereof." (Emphasis added.) Paragraph 5.1(d) of the "Zoning Board of Adjustment Town of Deering New Hampshire By Laws/Rules of Procedure" (ZBA Rules of Procedure) provides, "Appeals from an administrative decision taken under RSA 676:5 shall be filed within *30 days of the decision.*" (Emphasis added.)

On November 7, 2002, the residents filed their appeals of the March 29, 2002 and September 18, 2002 decisions of the selectmen. Both decisions fall outside the express requirement that an appeal be filed within thirty days of an administrative decision. Nonetheless, the ZBA voted to waive its filing deadline and allow the appeals to proceed.

Greene contends that the ZBA improperly waived its thirty-day filing deadline because "[o]nce a zoning board has defined the 'reasonable time' period for filing an appeal, the board may not thereafter waive that time period because there is no authority in the enabling legislation, RSA 676:5, I, that authorizes a zoning board to do so." As support for his contention,

Greene relies upon *Daniel v. B & J Realty*, 134 N.H. 174, 175-76 (1991). In *Daniel*, the Henniker Zoning Board of Adjustment (HZBA) allowed the plaintiffs to proceed in an appeal that had been filed fifteen days after an administrative decision by the Henniker Board of Selectmen, even though the HZBA had adopted rules of procedure establishing that "appeals from an administrative decision taken under RSA 676:5 shall be filed within 14 days of the decision." *Daniel*, 134 N.H. at 175 (brackets omitted). We held that because the time limit was consistent with the enabling statute, the HZBA was required to apply the rule literally. *Id.*

Greene points out that the ZBA Rules of Procedure contain virtually identical language to that found in the rules of the HZBA in *Daniel*. Thus, Greene argues that we must require the ZBA to apply the thirty-day rule literally, and hold that the residents' appeals were not timely filed. We disagree.

Greene overlooks language in both *Daniel* and the ZBA Rules of Procedure that distinguish this case. In *Daniel*, we pointed out that there was no provision in either the enabling statute or the HZBA rules that granted the HZBA discretionary authority to waive its filing deadline. *Id.* at 175-76. The ZBA Rules of Procedure, however, do contain such a provision. Paragraph 1.2 states, "The board, by at least three concurring votes, may waive any provision of these rules not otherwise mandated by state or federal law or by town ordinance." The ZBA voted, by a three to two majority, to allow the March 29, 2002 and September 18, 2002 appeals to proceed. Greene does not separately argue that the residents' appeals did not occur within a reasonable time as defined by RSA 676:5, I. Therefore, we conclude the ZBA properly determined that the appeals were timely filed.

Greene's third argument is that the ZBA erroneously construed the Deering Zoning Ordinance. The Deering Zoning Ordinance was originally adopted on March 13, 2001. It was readopted on March 12, 2002. Although the provisions were renumbered when the ordinance was readopted, the substance of the provisions remains the same. Paragraph 4k of the 2001 Deering Zoning Ordinance, and Paragraph 4.4k of the 2002 Deering Zoning Ordinance, read, in pertinent part, as follows:

(1) Commercial Junkyards lawfully existing on the effective date of this provision [March 13, 2001] may, upon application therefore, be licensed by the Board of Selectmen . . . .

(2) Junkyards not legally operating on the effective date of this provision may be licensed by the Board of Selectmen after having first received a recommendation from the Planning Board and the Conservation Commission . . . .

. . . .

(4) Pursuant to RSA 236:121, junkyard licenses shall expire on March 31st of each year. Junkyard licenses shall be renewed thereafter upon payment of an annual license fee . . . . Junkyard licenses shall be renewed without a hearing if all the provisions of this ordinance and RSA 236:111, *et seq.* have been complied with during the license period . . . .

We will refer to both the 2001 adopted ordinance and the 2002 readopted ordinance as the Deering Zoning Ordinance.

 The interpretation of a zoning ordinance is a question of law, which we review *de novo*. Because the traditional rules of statutory construction generally govern our review, the words and phrases of an ordinance should be construed according to the common and approved usage of the language. *Duffy v. City of Dover*, 149 N.H. 178, 181 (2003).

As described above, the selectman issued Greene a license on March 30, 2001, and reissued that license on March 29, 2002. In the March 30, 2001 letter authorizing Greene's license, the selectmen described Greene's use as "grandfathered." They explained that this meant that Greene could "operate in a place where [he] otherwise may not be able to operate." The ZBA interpreted the selectmen's use of the term "grandfathered" as referring to provision one of the Deering Zoning Ordinance, which provides that junkyards "lawfully existing" as of March 13, 2001, could operate without having to meet the additional requirements imposed by provision two for junkyards not "legally operating" as of that date. The ZBA determined, however, that the "grandfathering" decision would have to be made not only in March 2001, but again in March 2002. The ZBA stated, "The Selectmen have argued that the grandfathering decision was, in fact, made on March 30, 2001; however, in order to follow the provisions of [the Deering Zoning Ordinance], that decision would have to have been made again in March of 2002."

In making this determination, the ZBA relied upon provision four of the Deering Zoning Ordinance, which provides for the annual renewal of a junkyard license. The ZBA stated, "Since a junkyard license must be renewed annually . . . all criteria necessary for granting such license must

be considered by the Selectmen each time an application for renewal is made." After determining that the selectmen were required to consider whether Greene had a "lawfully existing" use as of March 13, 2001, when they made their March 29, 2002 licensing decision, the ZBA reviewed that decision. The ZBA then concluded, as described above, that Greene did not have a "lawfully existing" use as of March 13, 2001, and was therefore required to meet the additional requirements imposed by provision two of the ordinance.

Greene contends that the selectmen were not required to determine whether he had a "lawfully existing" use as of March 13, 2001, in their March 29, 2002 decision to issue his license. Greene argues that the Deering Zoning Ordinance did not require the selectmen to reevaluate whether Greene had a "lawfully existing" use every time they reissued Greene's license, but only the initial time. We agree.

■ We find the ZBA's interpretation of the Deering Zoning Ordinance erroneous as a matter of law. Provision four of the ordinance provides that a commercial junkyard license may be reissued if all provisions have been "complied with *during the license period*." (Emphasis added.) The relevant period for the March 29, 2002 determination—from March 31, 2001, the date the license was granted, to March 31, 2002, the date it expired—does not include any use prior to March 13, 2001. Provision one was interpreted—for the only time its interpretation was necessary—on March 30, 2001. For the selectmen to issue the March 2001 license, they had to determine that Greene had a lawfully existing use as of March 13, 2001. Once that determination was made on March 30, 2001, provision four did not require the selectmen to reconsider that determination when Greene sought to renew his license in 2002; rather, it only required an evaluation of Greene's use during the license period.

We conclude that the ZBA erred in its interpretation of the Deering Zoning Ordinance. As a result, we do not address whether Greene had a "lawfully existing" use as of March 13, 2001, because no appeal of the selectmen's March 30, 2001 decision that determined that Greene's use was "grandfathered" is pending before us.

Further, we need not address whether the trial court correctly determined that Greene's alleged pre-March 13, 2001 expansion of his non-conforming use completely divested him of his right to operate his junkyard, as we have concluded that the ZBA erred in addressing whether Greene had a "lawfully existing" use on March 13, 2001. Greene has also appealed the trial court's dismissal of his requests for a declaration as to

the number of cars he may maintain on his lot and an injunction prohibiting the town from enforcing its zoning ordinance against him. The trial court dismissed these requests as moot because it found that Greene had no right to operate his junkyard. As we reverse the decision of the trial court upholding the ZBA's application of the Deering Zoning Ordinance, Greene's requests may no longer be moot. We therefore remand those issues to the trial court.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred.