917 A.2d 193 (2007)
Kenneth McKENZIE
v.
TOWN OF EATON ZONING BOARD OF ADJUSTMENT.
No. 2005-778.
Supreme Court of New Hampshire.
Argued: November 14, 2006.
Opinion Issued: January 31, 2007.
*194 Hastings Law Office, P.A., of Fryeburg, Maine (Peter J. Malia, Jr. on the brief and orally), for the plaintiff.
Gardner, Fulton & Waugh, P.L.L.C., of Lebanon (H. Bernard Waugh, Jr. on the brief and orally), for the defendant.
Melendy & Lee, P.A., of Conway (Fay E. Melendy on the brief and orally), for the intervenor.
GALWAY, J.
The defendant, the Town of Eaton Zoning Board of Adjustment (ZBA), and the intervenor, Nancy Burns, appeal a ruling of the Superior Court (Fauver, J.) that upheld the constitutionality of an ordinance enacted by the Town. We affirm.
The record supports the following. In 1981, the town issued a building permit to Burns, allowing her to place a storage shed fifty-nine feet from the shore of a *195 lake abutting her property. In 1989, the town increased the setback requirements to 125 feet from the shore of the lake, thus making the shed nonconforming with the zoning ordinance. Also in 1989, the town passed Article VI, Section 2 of the Town of Eaton Zoning Ordinance, which stated, in pertinent part:
Any structure damaged by fire, deterioration, or other casualty to the extent of seventy-five (75) per cent or more of the floor area in square feet and is not reconstructed within one (1) year shall constitute discontinuance and abandonment under Article VI, 1.a. above and shall not be reconstructed or used except in conformity with this ordinance. The Board of Selectmen may permit the reconstruction or use of such building or structure substantially as it was prior to destruction upon finding that the same will not be detrimental or injurious to the neighborhood. If, for any reason, this permit is not granted such damaged structure shall be removed to clear ground level and put into safe condition within one (1) year following the date of damage. Any time after the expiration of said one (1) year, the Board of Selectmen may cause such removal to be done at the expense of the owner.
Article VI, Section 2 was still in effect on June 2, 2002, when a windstorm caused trees to fall on Burns' shed and damage it in excess of seventy-five percent of its floor area.
In March 2003, Burns met with the Eaton Selectmen and indicated that she wanted to rebuild her shed. The selectmen told her that "[t]he building does not meet setbacks but is grandfathered so it can be replaced with a building the same size and on the same footprint as before." By June 2, 2003, however, Burns had not rebuilt her shed or removed the debris left by the storm. On June 4, 2003, Kenneth McKenzie, an abutter and the plaintiff in this case, wrote to the selectmen, requesting that Burns remove the remnants of the shed and the debris on her property as required by Article VI, Section 2. The selectmen notified Burns on August 19, 2003, of her duties under this provision. Burns subsequently applied for a building permit to rebuild her shed, which the selectmen granted on August 26, 2003. McKenzie appealed the selectmen's decision to the ZBA. The ZBA reversed the selectmen's issuance of the building permit because it was not issued within the one-year period required by the ordinance. Burns filed for rehearing, which the ZBA granted. After a rehearing, the ZBA reversed its prior decision and affirmed the selectmen's issuance of the building permit.
McKenzie appealed the ZBA's decision to the superior court, arguing that the ordinance provision at issue was clear and unambiguous and that the ZBA failed to properly apply it. McKenzie asserted that the ZBA erred by relying upon the abandonment test established in Lawlor v. Town of Salem, 116 N.H. 61, 352 A.2d 721 (1976), which considers whether the property owner intended to abandon the nonconforming use. McKenzie also argued that the ZBA acted ultra vires by declaring the ordinance provision unconstitutional. The ZBA disagreed, arguing that it had the authority to decide whether the ordinance provision was unconstitutional and that it properly considered Burns' subjective intent because such a consideration was constitutionally required by Lawlor. The trial court agreed with both parties' conclusions that the ZBA had found the provision unconstitutional and had determined that Burns did not intend to abandon her nonconforming use. The trial court reversed the decision of the ZBA, ruling that, while the ZBA's consideration of intent may have been reasonable *196 in the absence of the ordinance provision, the terms of the provision allowed the ZBA no discretion in determining abandonment. Because Burns failed to reconstruct her shed within one year of its destruction, the trial court found the ZBA's decision unreasonable. The court also ruled that it could not find the ordinance unconstitutional.
On appeal, the ZBA and Burns first argue that the trial court erred by interpreting the ZBA's decision as finding that the ordinance provision was facially unconstitutional under substantive due process. They assert that the ZBA actually found the provision unconstitutional as applied. They argue that, had the trial court properly interpreted the ZBA's decision, the court would have recognized that the provision would not apply to the shed because RSA 674:19 (1996) prohibits the application of new zoning ordinances to existing buildings. The appellants' second argument is that a consideration of subjective intent pursuant to the Lawlor test is required by the New Hampshire Constitution when determining abandonment of a nonconforming use. Because the ordinance provision precluded a consideration of intent, the appellants argue, the trial court erred in reversing the ZBA.
McKenzie responds that, because the ZBA and Burns did not raise the effect of RSA 674:19 at trial, this issue is not preserved for our review. McKenzie additionally argues that the trial court was correct to rule that the ZBA should not have considered Burns' intent because intent is not a factor for determining abandonment under the plain language of the ordinance.

I
Before we address the parties' arguments, we note that we agree with their interpretation that the ordinance provision at issue precludes a consideration of a property owner's subjective intent when determining whether the owner has abandoned a destroyed nonconforming use or structure. The provision states that a nonconforming use that is sufficiently destroyed and is not rebuilt within a year "shall constitute discontinuance and abandonment" and "shall not be reconstructed or used except in conformity with this ordinance." It is a general rule of statutory construction that the word "shall" makes enforcement mandatory. In the Matter of Bazemore & Jack, 153 N.H. 351, 354, 899 A.2d 225 (2006). Accordingly, we interpret the ordinance as precluding a consideration of intent in determining abandonment. As we are the final arbiter of the interpretation of a zoning ordinance, Olszak v. Town of Hampton, 139 N.H. 723, 726, 661 A.2d 768 (1995), we will apply our interpretation throughout this opinion.

II
The ZBA and Burns first argue that the ordinance provision should not apply to Burns' shed because RSA 674:19 prohibits the application of zoning ordinances to buildings in existence prior to the enactment of the ordinance provision. We conclude that this issue is not preserved for our review and therefore decline to address it. See LaMontagne Builders v. Bowman Brook Purchase Group, 150 N.H. 270, 274, 837 A.2d 301 (2003). It is a long-standing rule that parties may not have judicial review of matters not raised at trial. N. Country Envtl. Servs. v. Town of Bethlehem, 150 N.H. 606, 619, 843 A.2d 949 (2004). As the appellants, the ZBA and Burns have the burden, not only of providing a record sufficient for our review, but also of demonstrating that, before raising issues on appeal, they first raised those issues to the trial court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250, 855 A.2d 564 *197 (2004); Sup.Ct. R. 16(3)(b). Because the appellants have not shown that they raised the effect of RSA 674:19 to the trial court, we conclude that this issue is not preserved for appeal and decline to review it.

III
The ZBA and Burns next contend that a consideration of intent pursuant to Lawlor is constitutionally required to determine abandonment. On appeal from a trial court's decision regarding a zoning board of adjustment's decision, we will uphold the trial court's decision unless it is unsupported by the evidence or is legally erroneous. Greene v. Town of Deering, 151 N.H. 795, 797-98, 868 A.2d 986 (2005). Because the constitutionality of an ordinance provision involves a question of law, we review the trial court's decision de novo. Taylor v. Town of Plaistow, 152 N.H. 142, 144, 872 A.2d 769 (2005). We are the final arbiter of state constitutional disputes. Baines v. N.H. Senate President, 152 N.H. 124, 129, 876 A.2d 768 (2005). Zoning ordinances are presumed to be valid, and the challengers bear the burden of proving them unlawful. Morgenstern v. Town of Rye, 147 N.H. 558, 562, 794 A.2d 782 (2002).
The ZBA and Burns are correct that the Lawlor test for abandonment considers the property owner's intent to abandon a nonconforming use; however, we established that test in the absence of an applicable ordinance defining abandonment. In this case, an ordinance directly applies and permits the abandonment of a nonconforming use without a consideration of intent. We note that courts of other jurisdictions, as well as legal scholars, have concluded that a consideration of intent to abandon is not necessary when an ordinance defines abandonment without a consideration of intent. See Toys "R" Us v. Silva, 89 N.Y.2d 411, 654 N.Y.S.2d 100, 676 N.E.2d 862, 867 (1996) (stating that, generally, abandonment requires an intent to relinquish and some overt act or failure to act, but that "the inclusion of a lapse period in the zoning provision removes the requirement of intent to abandon  discontinuance of nonconforming activity for the specified period constitutes an abandonment regardless of intent"); Gurganious v. City of Beaufort, 317 S.C. 481, 454 S.E.2d 912, 916-18 (1995) (rejecting the appellant's argument that the common law definition of abandonment applied, and applying instead the objective test established in the relevant zoning ordinance that prohibited the resumption of a nonconforming use if discontinued for one year); Union Square Ass'n, Inc. v. Marc Lounge, Inc., 75 Md.App. 465, 541 A.2d 1321, 1324 (1988) (enforcing an ordinance that required the owner of a destroyed nonconforming use to obtain a building permit and begin construction within one year in order to retain the nonconforming status of the structure, and holding that the nonconforming use owner's lack of intent to abandon the use "matters not one whit"); 4 Zeigler, Rathkopf's The Law of Zoning and Planning § 74:3, at 74-11 (2005) (stating, "A discontinuance provision which specifically states that it operates to prevent and prohibit resumption of a nonconforming use after a specified period of time has lapsed, regardless of any reservation of an intent not to abandon or of an intent to reserve the right to resume, removes the factor of intent to abandon; it operates even where there was no intent to abandon or even where there was an intent not to abandon"); 15 P. Loughlin, New Hampshire Practice, Land Use Planning and Zoning § 8.04, at 128 (2000) (stating that most municipalities have taken the guesswork out of determining common law abandonment by enacting ordinances that give a specific time period of nonuse that constitutes abandonment); *198 Annotation, Zoning: Right to Resume Nonconforming Use of Premises After Voluntary or Unexplained Break in the Continuity of Nonconforming Use, 57 A.L.R.3d 279, 312 (1974) (stating, "[I]n many instances, ordinances have nullified the theretofore-adopted rule of intention as controlling in connection with abandonment of a non-conforming use, by fixing a Time Limit in such ordinances, for mere Non-Use of a non-conforming use, so that  under such ordinances  mere non-use thereof for a stated time, becomes, of itself, sufficient to terminate a non-conforming use" (quotations omitted)). The task before us is to determine whether the ordinance provision at issue is a constitutional exercise of Eaton's police power, which presents an issue of substantive due process.
A substantive due process challenge to an ordinance questions the fundamental fairness of the ordinance. Dow v. Town of Effingham, 148 N.H. 121, 124, 803 A.2d 1059 (2002). "In determining whether an ordinance is a reasonable exercise of the municipality's police powers and, therefore, can withstand a substantive due process challenge, we have consistently applied the rational basis test." Id. We recently clarified our analysis under the rational basis test in Boulders at Strafford v. Town of Strafford, 153 N.H. 633, 641, 903 A.2d 1021 (2006):
We . . . hold that the rational basis test under the State Constitution requires that legislation be only rationally related to a legitimate governmental interest. We further hold that the rational basis test under the State Constitution contains no inquiry into whether legislation unduly restricts individual rights, and that a least-restrictive-means analysis is not part of this test.
The only manner in which application of the rational basis test will differ depends upon whether one challenges the ordinance on its face or as applied to the property. In a facial challenge to an ordinance, we will not rule the ordinance unconstitutional unless it could not be constitutionally applied in any case. Id. at 642, 903 A.2d 1021. An as-applied challenge solely questions the constitutionality of the ordinance "in the relationship of the particular ordinance to particular property under particular conditions existing at the time of litigation." Dow, 148 N.H. at 124, 803 A.2d 1059.
The appellants argue that the ordinance provision is unconstitutional as applied to Burns' shed. Accordingly, we address whether the provision is rationally related to a legitimate governmental interest under the particular facts of this case. The part of the provision upon which the ZBA and Burns focus is the first sentence, which states that any nonconforming structure that is destroyed to the extent of seventy-five percent or more and is not rebuilt within one year "shall constitute discontinuance and abandonment" and "shall not be reconstructed or used except in conformity with this ordinance." The plain language of this provision evinces a purpose to discourage the continuation of nonconforming uses. The provision works to reduce nonconforming uses by establishing a time limit on their reconstruction. Those nonconforming uses not reestablished within a year are lost. Thus, the provision reduces the chance that a nonconforming use will be rebuilt. It is well established both in this state and in others that a legitimate purpose of zoning is the reduction and elimination of nonconforming uses. See, e.g., Hurley v. Hollis, 143 N.H. 567, 571, 729 A.2d 998 (1999) (stating, "the well established policy of zoning law is to carefully limit the enlargement and extension of nonconforming uses, and, ultimately, to reduce them to conformity as *199 completely and rapidly as possible" (quotations omitted)); 4 Zeigler, Rathkopf's The Law of Zoning and Planning § 74:11, at 74-38 (stating, "the spirit of zoning is to restrict, rather than increase, nonconforming uses and to eliminate such uses as speedily as possible"). Accordingly, the ordinance's purpose of reducing nonconforming uses is a legitimate governmental interest.
The remaining question is whether the provision, as applied to Burns' shed, bears a rational relationship to the legitimate goal. By imposing a time limit on Burns' ability to rebuild her nonconforming shed, the provision reduced the possibility that Burns would reconstruct her nonconforming shed and increased the possibility that the shed, if rebuilt, would be rebuilt in compliance with the zoning ordinance. As Burns did not rebuild her shed within a year, the efficacy of the time limitation is evident. Accordingly, as applied to Burns' property, the ordinance provision bears a rational relationship to the legitimate goal of reducing nonconforming uses. Based upon the above reasoning, we conclude that the ordinance provision at issue does not violate substantive due process as applied to Burns' nonconforming shed. Although there may be ways in which the provision could further the goal of reducing nonconforming uses while being less restrictive of Burns' property rights, we have not considered such alternatives, pursuant to our holding in Boulders, 153 N.H. at 638, 903 A.2d 1021 (stating, "We will not second-guess the town's choice of means to accomplish its legitimate goals, so long as the means chosen is rationally related to those goals").
We finally note that the appellants rely in part upon Dugas v. Town of Conway, 125 N.H. 175, 480 A.2d 71 (1984), in support of their position. In Dugas, we required the town to pay attorney's fees to the plaintiff for having to defend against an unconstitutional taking of his nonconforming use. Id. at 183, 480 A.2d 71. Dicta notwithstanding, Dugas is distinguishable from the instant case because the sole issue in Dugas was whether the trial court erred in denying the plaintiff's request for attorney's fees. Id. at 179-80, 480 A.2d 71. Further, the underlying challenge in Dugas was a takings challenge, as distinguished from the challenge in this case, which is substantive due process.
Affirmed.
BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred; DUGGAN, J., concurred specially.
DUGGAN, J., concurring specially.
Because neither Burns nor the Town expressly argued in their briefs or in the notice of appeal that the trial court should have applied either a takings analysis or a heightened level of review, I concur in the result reached by the majority. However, I write separately to offer some observations about applying the rational basis test under the facts of this case and to suggest an alternative approach.

I
Our jurisprudence involving the relationship between the State Constitution and nonconforming uses derives primarily from Part I, Articles 2 and 12 of the State Constitution. See N.H. CONST. pt. I, arts. 2, 12; see also Town of Salem v. Wickson, 146 N.H. 328, 330-31, 770 A.2d 1120 (2001). These two provisions provide all persons the right to acquire, possess and protect property. See Wickson, 146 N.H. at 330, 770 A.2d 1120. "The right to maintain nonconforming uses is meant to protect property owners from a retrospective *200 application of zoning ordinances . . ." that would otherwise effectuate a taking by depriving property owners of the continuing use of their land. Id.
In past cases analyzing nonconforming uses under Articles 2 and 12, we have used broad language that carries constitutional implications. We have implied  if not held  that property owners have fundamental constitutional rights in vested nonconforming uses. Two examples are illustrative.
First, in Grondin v. Town of Hinsdale, 122 N.H. 882, 885-86, 451 A.2d 1299 (1982), we were confronted with two provisions of a town ordinance that regulated the operation of mobile homes in Hinsdale. The first provision provided that all preexisting mobile homes would be grandfathered and could continue to operate in substantially the same manner as they did on the date of adoption of the ordinance. Id. at 884-85, 451 A.2d 1299. The second provision required mobile home owners to obtain a special permit for their mobile homes and imposed a limit of 350 on the number of permits that would be issued. Id. at 885, 451 A.2d 1299. The plaintiffs in Grondin owned a parcel of property that contained 156 sites for mobile homes, all of which had been constructed prior to the enactment of the ordinance provisions at issue. Id. at 884, 451 A.2d 1299. The plaintiffs argued that the 350-permit ceiling, which had been reached before the plaintiffs could obtain permits for all of their mobile home sites, failed to take into account the plaintiffs' vested property right in the 156-mobile home park sites which had become valid, nonconforming uses under the first provision of the ordinance (described above). Id. at 885, 451 A.2d 1299.
We agreed with the plaintiffs and held that
[t]he fundamental and inalienable property right that vests in a property owner has as its foundation this State's Constitution. Part I, article 2 of the New Hampshire Constitution guarantees all persons the right to acquire, possess, and protect property. This guarantee has been deemed so specific as to necessarily limit all subsequent grants of power to deal adversely with it. Similarly, every person has the right to have his enjoyment of property protected. N.H. Const. part I, art. 12. These two constitutional provisions are limitations upon the so-called police power of the State and subdivisions thereof, and nullify arbitrary legislation passed under the guise of that power.
Id. at 885-86, 451 A.2d 1299 (quotations, citations and brackets omitted). Compare id. with Morgenstern v. Town of Rye, 147 N.H. 558, 562, 794 A.2d 782 (2002) ("Generally speaking, a property owner has no right to the continued existence of any particular zoning classification of his property, because all property is held in subordination to the police power of the municipality."), and Loundsbury v. City of Keene, 122 N.H. 1006, 1009-10, 453 A.2d 1278 (1982) (stating, in the context of an amortization ordinance provision, that the protections of Part I, Articles 2 and 12 of the State Constitution apply to nonconforming uses and holding that a past use of land may "create vested rights to a similar future use, so that a town may not unreasonably require the discontinuance of a nonconforming use. A provision requiring the discontinuance of a nonconforming use will be deemed unreasonable if no public purpose supports it or if the amortization period is inadequate." (citations omitted)), and Metzger v. Town of Brentwood, 117 N.H. 497, 502, 374 A.2d 954 (1977) ("The police power and the right to private property must be considered together as interdependent, the one qualifying and limiting *201 the other." (quotation omitted)), overruled on other grounds by Boulders at Strafford v. Town of Strafford, 153 N.H. 633, 641, 903 A.2d 1021 (2006).
Later, we applied the types of principles articulated in Grondin in a case involving an ordinance that regulated abandonment of nonconforming uses. See Dugas v. Town of Conway, 125 N.H. 175, 480 A.2d 71 (1984). In Dugas, the face of a sign was removed from the pole to which it had been affixed, but the pole was left standing for over a year. Id. at 178, 480 A.2d 71. During that year, the Town enacted an ordinance limiting the number of free-standing signs that could be placed in front of a business. Id. Despite the presence of other free-standing signs in front of the plaintiff's place of business, he sought a permit to reinstall the face of his sign on the pole, arguing that the Town's limitation on the number of free-standing signs that could stand in front of a business was inapplicable because his sign was a vested nonconforming use. Id. at 178-79, 480 A.2d 71. The Town denied the plaintiff's application for the permit, relying upon another ordinance provision which provided, in part, "Any non-conforming sign the use of which has been discontinued for a period of one year or that has been damaged 100% shall not be reestablished, restored, or repaired unless it is made to comply with this ordinance." Id. The plaintiff appealed.
The superior court held that the ordinance provision quoted above resulted in an unconstitutional taking. Id. at 179, 480 A.2d 71. The superior court, however, denied the plaintiff's request for attorney's fees because it did not find that the Town's enforcement and subsequent defense of the ordinance were frivolous or in bad faith. Id. The plaintiff appealed, and we reversed. Id. at 183, 480 A.2d 71.
As in Grondin, our language in Dugas was broad. We held that a town's power to regulate the use of buildings and land through the enactment of zoning ordinances is circumscribed by Part I, Articles 2 and 12 of the State Constitution, id. at 181-82, 480 A.2d 71, and we described the Town's refusal to issue a permit for the sign as an allegation of interference "with the fundamental property rights of a plaintiff." Id. at 180, 480 A.2d 71 (emphasis added). Therefore, we determined the plaintiff was entitled to attorney's fees. Id. at 183, 480 A.2d 71.
Although, as the majority correctly observes, we were addressing takings claims in both Grondin and Dugas, both cases could reasonably be read to speak of effectuating a taking of property rights that are not only vested but also fundamental under our State Constitution. Moreover, in Dugas, we stated that the regulation at issue there, which is materially similar to the regulation at issue here, interfered with fundamental rights. Id.; see also id. at 182-83, 480 A.2d 71. If, under Dugas, such a regulation implicates fundamental property rights, then so too does the regulation in this appeal. And, if regulations interfere with fundamental rights, the rational basis standard generally is not applicable. See Akins v. Secretary of State, 154 N.H. ___, ___, 904 A.2d 702, 706 (2006) ("[G]enerally, when governmental action impinges upon a fundamental right, such matters are entitled to review under strict judicial scrutiny.").
Given such precedent, it is unclear whether we ought to "consistently appl[y] the rational basis test" in evaluating substantive due process challenges to local ordinances that regulate vested nonconforming uses without some explanation as to why we do so. See Dow v. Town of Effingham, 148 N.H. 121, 124, 803 A.2d 1059 (2002). It would be more consistent *202 with our general substantive due process jurisprudence to first explore the nature of the right allegedly infringed, and based upon that analysis, explain why we apply a particular level of scrutiny. This is especially true where, as here, the regulation at issue allegedly interferes with a right (or rights) we seem to have specifically held to be fundamental.
Exploring the nature of the right infringed could involve, for example: (1) clarifying our earlier case law by more narrowly and clearly defining the nature of the fundamental rights (vis-à-vis nonconforming uses) protected by Part I, Articles 2 and 12, cf. Robertson v. City and County of Denver, 874 P.2d 325, 339-46 (Colo. 1994) (Vollack, J., concurring); (2) explaining how the police power circumscribes the fundamental rights at issue, cf. Asselin v. Town of Conway, 135 N.H. 576, 578, 607 A.2d 132 (1992) (explaining in context of equal protection challenge); or (3) adopting a heightened level of review, see, e.g., Caspersen v. Town of Lyme, 139 N.H. 637, 645-46, 661 A.2d 759 (1995) (Brock, C.J., concurring specially) (suggesting that given an appropriate occasion, we should review our holding that substantive due process challenges to zoning ordinances are evaluated under the rational basis standard); Quirk v. Town of New Boston, 140 N.H. 124, 129, 663 A.2d 1328 (1995) (refusing to reconsider the level of review that should be applied when ordinance provisions are challenged because the parties did not brief or raise the issue). Such an analysis would provide a stronger foundation to explain why we apply a particular level of scrutiny in any given case. In this appeal, however, the parties have not raised or briefed these issues; hence, resolution of them must be left for another day. See id.

II
Ordinance provisions like the one at issue in this appeal more appropriately lend themselves to a takings analysis than a substantive due process one. If a takings claim had been clearly raised in this case, Dugas may have been on point and perhaps even dispositive. Further, if a takings claim had been clearly asserted, a different result may have obtained.
A strict one-year "use-it-or-lose-it" ordinance provision is unduly rigid. A nonconforming use may not be repaired for over a year for any number of reasons, none of which suggest that it should be deemed abandoned. For example, a soldier may be deployed overseas for over a year and have no way of knowing that there has been property damage or that repairs need to be made; a family business may have difficulty in obtaining financing to rebuild; or some type of natural disaster or catastrophe could make rebuilding within a year impractical. To the extent an ordinance is read to contain a strict one-year "use-it-or-lose-it" provision, it would fail to account for such reasonable contingencies. Moreover, under our precedent, the ordinance likely would result in a taking. See, e.g., Dugas, 125 N.H. at 180-83, 480 A.2d 71. In light of the individual property rights involved, some courts have adopted a rule that accommodates those rights while at the same time accounting for a municipality's interest in eliminating nonconforming uses. See City of Minot v. Fisher, 212 N.W.2d 837 (N.D.1973); Ansley House v. City of Atlanta, 260 Ga. 540, 397 S.E.2d 419 (1990).
In City of Minot, the North Dakota Supreme Court considered whether an ordinance dealing with abandonment of nonconforming uses was confiscatory and discussed three approaches to analyzing such provisions. The first approach is "that there must be shown an intent to abandon a nonconforming use before its resumption *203 can be prohibited; this despite the presence of an ordinance containing a specified period of discontinuance designed to prevent resumption of a nonconforming use." City of Minot, 212 N.W.2d at 839. The second approach is "that the inclusion of a discontinuance period in a zoning ordinance on nonconforming uses removes the necessity of proving intent to abandon such a use, and, therefore, passage of the required discontinuance period of time alone prevents the resumption of the nonconforming use." Id. at 840. The third approach, which was the one ultimately adopted by the North Dakota Supreme Court, "presumes abandonment after the designated period of nonuse [as set forth in an ordinance] has passed, but avoids a due process challenge by not applying the presumption of abandonment in situations where the cessation of use was beyond the control of the property owner." Id. at 841; see also Ansley House, 397 S.E.2d at 421 (adopting the presumption approach and describing it as the majority view).
The North Dakota Supreme Court's reasoning is persuasive as to why the third approach would be not only the most practical, but also the most respectful of land ownership rights, at least as we have articulated them. See, e.g., Dugas, 125 N.H. at 181-83, 480 A.2d 71. Thus, if a takings claim had been clearly raised by the defendant, we could have followed the lead of the North Dakota Supreme Court in City of Minot and read Article VI, Section 2 of the Town of Eaton Zoning Ordinance as establishing a rebuttable presumption, which would have protected the rights that gave rise to the taking at issue in Dugas. By so doing, we would have been able to avoid concluding that the ordinance was confiscatory. See City of Minot, 212 N.W.2d at 841.
If the third approach were applied in the present case, Article VI, Section 2 of the Town of Eaton Zoning Ordinance would have created a presumption that Burns' nonuse of her shed rendered it an abandoned nonconforming use. Then, the ZBA would have been required to permit Burns to attempt to overcome that presumption by offering facts or argument that demonstrated that the cessation of use was beyond her control. I concur in the result reached by the majority because I do not read its opinion as foreclosing the adoption of such an approach under more compelling facts where the takings issue is squarely raised.