Strafford
No. 2009-126

PIKE INDUSTRIES, INC. & a.

v.

BRIAN WOODWARD & a.

Argued: January 13, 2010
Opinion Issued: May 7, 2010

*Shaheen & Gordon, P.A.*, of Concord (*Karyn P. Forbes* and *Arpiar G. Saunders, Jr.* on the brief, and *Ms. Forbes* orally), for appellees, Pike Industries, Inc. and Redimix Companies, Inc.

*Casassa and Ryan*, of Hampton (*John J. Ryan* on the brief and orally), for the appellants.

*Wyskiel, Boc, Tillinghast & Bolduc, P.A.*, of Dover (*Christopher A. Wyskiel* on the brief and orally), for the Town of Madbury.

DUGGAN, J. The appellants, Brian Woodward and other abutters of Pike Industries, Inc.'s (Pike) asphalt plant, appeal a ruling of the Superior Court (*Tucker*, J.) reversing the decision of the Town of Madbury Zoning Board of Adjustment (ZBA) that Pike had discontinued its nonconforming use of its plant. We affirm in part and reverse in part.

The following facts are drawn from the administrative record. Beginning prior to 1960, Pike has continuously operated an asphalt production plant in Madbury. In the mid-1960s, the town promulgated an ordinance that zoned the area surrounding the plant for residential and agricultural use, making the plant a pre-existing nonconforming use. After that, Pike continued to operate the plant on a seasonal basis from mid-spring through November or December. During the winter months, Pike performed equipment maintenance, paid electric bills generated by the plant, and submitted bids for future work for the plant.

After producing a "batch" of asphalt on October 17, 2005, Pike suspended its seasonal operations, as was customary. Between October 2005 and November 2006, Pike made electrical and operational repairs to the plant, engaged in emissions training for plant staff, bought safety equipment for the plant, worked on mix plans exclusively for the plant, and submitted mandatory site plan reports to the State. Overall, Pike spent $24,596.32 in maintenance and repair costs during this thirteen-month period. In addition, Pike continued to advertise asphalt production at the Madbury plant on its website, included the Madbury plant in its price list, and submitted bids to municipalities for projects involving asphalt to be produced at the Madbury plant. Although Pike was prepared to begin asphalt production at any time, it did not produce any asphalt at the Madbury plant between October 2005 and August 2007. Pike had other facilities that were more suitable for the bids it received during that time period.

In April 2007, Redimix Companies, Inc. (Redimix), Pike's sister entity, filed a site plan application with the Madbury Planning Board proposing to

replace the asphalt plant with a concrete batch facility. In May 2007, the planning board held a hearing on the site plan application, at which it was revealed that the asphalt plant had not produced any asphalt for two years. In June 2007, the abutters submitted a letter to the planning board arguing that the nonconforming use had been discontinued under the relevant town ordinance. The Madbury Zoning Ordinance (ordinance) provides, in pertinent part, that "[w]henever a non-conforming use has been discontinued for more than one year for any reason, such non-conforming use shall not thereafter be re-established, and the future use of the property shall be in conformity with the provisions of this Ordinance." MADBURY ZONING ORDINANCE art. XIII, § 1(b). The planning board voted unanimously that there was "no discontinuance of use concerning the Redi-Mix application." The abutters appealed to the ZBA.

The ZBA determined that Pike had produced no asphalt during 2006, but had incurred considerable costs due to repair, training, personnel, and other maintenance functions. After considering the "townspeople's point of view," the "spirit of the ordinance," and other potential uses for the site, the ZBA determined that the production of asphalt constituted the nonconforming use. Therefore, because Pike had not produced asphalt for more than one year, the ZBA ruled that Pike was ineligible to recommence asphalt production under the town's ordinance. In its discussions, the ZBA was uncertain whether it had to determine whether Pike intended to abandon its nonconforming use. Ultimately, relying upon *McKenzie v. Town of Eaton Zoning Board of Adjustment*, 154 N.H. 773 (2007), the ZBA concluded that Pike's intent was irrelevant and it had to decide only whether Pike had discontinued its nonconforming use for one year.

Pike appealed to the superior court, which reversed and remanded the ZBA's decision. The court concluded that the ZBA relied upon improper considerations in interpreting the ordinance. It also found that the ZBA erred in defining "use" narrowly as the mere production of asphalt, thereby finding the nonconforming use discontinued. Finally, the trial court ruled that, pursuant to *Lawlor v. Town of Salem*, 116 N.H. 61 (1976), the ZBA should have considered whether Pike intended to abandon its pre-existing nonconforming use. This appeal followed.

The abutters argue that the superior court erred in finding that: (1) the ZBA should not have considered the "spirit of the ordinance" in interpreting the town's ordinance; (2) the ZBA applied the incorrect definition of the term "use" in determining whether Pike had discontinued its pre-existing nonconforming use; and (3) the ZBA should have considered whether Pike intended to abandon the nonconforming use. We address each argument in turn.

Our review of zoning cases is limited. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005). "The factual findings of the ZBA are deemed *prima facie* lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of probabilities, on the evidence before it, that the ZBA's decision is unreasonable." *Id.* "The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the trial court." *Id.* "We will uphold the superior court's decision on appeal unless it is not supported by the evidence or is legally erroneous." *Id.*

▮The interpretation of a zoning ordinance is a question of law, which we review *de novo*. *Fox v. Town of Greenland*, 151 N.H. 600, 605 (2004). Because the traditional rules of statutory construction govern our review, we construe the words and phrases of an ordinance according to the common and approved usage of the language. *Id.* When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. *Id.*

▮We first address the abutters' argument that the superior court erred in finding that the ZBA should not have considered "the spirit of the ordinance" in determining whether the asphalt plant use had been discontinued. The abutters argue that the ZBA properly considered the "spirit of the ordinance" because we have held that statutory provisions are to be construed "in a manner that is consistent with the spirit and objectives of the legislation as a whole." *City of Manchester Sch. Dist. v. City of Manchester*, 150 N.H. 664, 669 (2004). We have also held, however, that we will "not look beyond the language of a statute to determine legislative intent if the language is clear and unambiguous." *Petition of Goffstown Educ. Support Staff*, 150 N.H. 795, 799 (2004).

We agree with the superior court that the ZBA erred in *beginning* its analysis of the ordinance by considering factors other than the plain language of the ordinance itself. In reaching their decision, members of the ZBA noted that the "spirit of the zoning is to restrict rather than increase nonconforming uses and to eliminate them" and "the spirit of the ordinance" is "a great factor to consider." The language of the ordinance, however, is plain and unambiguous that if "a non-conforming use has been discontinued for more than one year for any reason, such non-conforming use shall not thereafter be re-established." MADBURY ZONING ORDINANCE art. XIII, § 1(b). Therefore, the only issue before the ZBA was whether Pike had discontinued its use.

Next, we consider the abutters' argument that the trial court erred in determining the ZBA applied the incorrect definition of the term "use" in analyzing whether Pike had discontinued its pre-existing nonconforming

use. The ZBA found that "use" meant that Pike had to actually produce asphalt at the Madbury plant. Pike, however, argues that it used the asphalt plant by maintaining, repairing, and upgrading the asphalt plant, advertising and soliciting bids, submitting emissions testing results to the State, purchasing and providing safety training and equipment for the plant, and performing mix designs at the site. The trial court agreed, finding that "the ZBA erred . . . in selecting one aspect of a commercial endeavor and then determining that, since it did not occur, the nonconforming use was discontinued."

As set forth above, we construe the words and phrases of an ordinance according to the common and approved usage of the language. *Fox*, 151 N.H. at 605. The ordinance defines a "[n]onconforming building, structure or use" as "[a] building, structure, or use of land legally existing at the time of enactment of this ordinance and which does not conform to the regulations of the district in which it is situated." MADBURY ZONING ORDINANCE art. III. We agree with the trial court that the ZBA should have considered "other aspects of Pike's business operations," not just whether it produced asphalt during the period of time in question.

As part of its business, Pike produces asphalt when customers order it. Pike, therefore, must engage in other activities, such as maintaining and repairing equipment within the plant and advertising and soliciting bids, to be prepared to produce asphalt when orders arrive. We agree with the trial court's analogy of the asphalt plant to a store. A store owner must set up a store front, stock the store with merchandise, maintain a staff, pay utilities, and advertise its services. Even with all of these preparations, however, the store owner cannot guarantee that customers will purchase merchandise. Like the store owner, Pike maintained the asphalt plant in a state of readiness to produce asphalt, but had no customers with orders suitable for that plant. Therefore, although Pike did not produce asphalt in 2006, it continued to use the asphalt plant.

■ Finally, we consider the abutters' argument that the trial court erred in finding that the ZBA should have considered whether Pike intended to abandon its nonconforming use. In *Lawlor*, we held that the right to a nonconforming use could be lost by abandoning it. *Lawlor*, 116 N.H. at 62. In *McKenzie*, we distinguished *Lawlor*, and noted that other jurisdictions "have concluded that a consideration of intent to abandon is not necessary when an ordinance defines abandonment without a consideration of intent." *McKenzie*, 154 N.H. at 777. We further held that an ordinance that by its own terms does not require subjective intent to abandon a nonconforming use is constitutional. *Id.* at 778-79.

■ Under the terms of the ordinance, the ZBA correctly decided it did not need to consider Pike's intent to abandon the nonconforming use. The ordinance at issue in *McKenzie* provided that "a nonconforming use that is sufficiently destroyed and is not rebuilt within a year 'shall constitute discontinuance and abandonment.'" *Id.* at 776. Thus, the ordinance defined what constituted abandonment. Similarly, the ordinance here provides that when "a non-conforming use has been discontinued for more than one year for any reason, such non-conforming use shall not thereafter be re-established." MADBURY ZONING ORDINANCE art. XIII, § 1(b). The ordinance, by its own terms, defines what constitutes the discontinuance of the nonconforming use. The phrase "for any reason" negates the requirement that the ZBA must consider Pike's subjective intent in deciding whether Pike discontinued its nonconforming use. The facts of this case fall within the analysis set forth in *McKenzie*, and the ZBA did not need to consider Pike's subjective intent. Therefore, we reverse the superior court's order requiring the ZBA to determine on remand whether Pike intended to abandon the pre-existing nonconforming use. In all other respects, we affirm.

*Reversed in part; affirmed in part.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.